FURR'S, INC., et al., Appellants,

v.

UNITED SPECIALTY ADVERTISING COMPANY et al., Appellees.

No. 5664.

Court of Civil Appeals of Texas. El Paso.

Nov. 25, 1964.

Rehearing Denied Dec. 30, 1964.

Turpin, Kerr, Smith & Dyer, Kerr, Fitz-
gerald & Kerr, Midland, Crenshaw, Dupree
& Milam, James H. Milam, Cecil C. Kuhne,
Lubbock, for appellants.

Stubbeman, McRae, Sealy & Laughlin, Milton L. Bankston, W. B. Browder, Jr., Rush Moody, Jr., Midland, Passman & Jones, Dallas, and Hindin & Susman, Los Angeles, Cal., for appellees.

PRESLAR, Justice.

This is a "trade secret" case which also involves unfair competition and conspiracy. After a trial by jury, appellees (as plaintiffs) recovered judgment against appellants Furr's and the Webster, Harris & Welborn Advertising Agency for damages in the amount of $60,000.00, and a permanent injunction by which the appellant-defendants were enjoined from making, using or distributing a system and device known as the "Cash Circle Card" program, or any other advertising program, scheme or device the same, or substantially the same, as plaintiffs' Bonus Card program or system. Plaintiffs obtained a temporary injunction which was reversed by this court in Furr's Inc. v. United Speciality Advertising Company, Tex.Civ.App., 338 S.W.2d 762 (1960), writ of error refused, n. r. e., and reference is made to that case for greater details.

Appellants present some 48 assignments of error, grouped for convenience of argument. We do not feel it necessary to discuss each individually, as the disposition of some will make the consideration of others unnecessary. The case will be reversed and rendered.

■■■■ We first take up appellants' contention that this court's prior decision on the temporary injunction phase of the case determined, as the law of the case, that no trade secret existed and no confidential relationship existed between the parties. We feel that those issues were so distinctly put into issue and so fully developed and brought forward on appeal as to make their determination final as to the parties here involved and their privies. They were so tried and determined as to come within the rule followed by this court in Texaco Inc. v. Parker, Tex.Civ.App., 373 S.W.2d 870 (err.

ref., n. r. e.), which held that, even though in the strict sense, the decision on appeal from the granting or refusal of a temporary injunction may not be res judicata of the issues on final hearing, it may become the law of the case as to the legal principles declared. This is an exception to the general rule that an interlocutory judgment will not support a plea of res judicata, but it is a well-founded exception where the parties elect to distinctly put in issue a right or question of fact, as a ground of recovery or defense, and have it directly determined by the courts. It is supported by the authorities. Birchfield v. Bourland, Tex.Civ.App., 187 S.W. 422; International Longshoremen's Ass'n., Independent v. Galveston Mar. Ass'n., Tex.Civ.App., 358 S.W.2d 607; Baker v. Hill, Tex.Civ.App., 35 S.W.2d 779 (wr. dism.); Hayden v. City of Houston, Tex.Civ.App., 305 S.W.2d 798 (wr. ref., n. r. e.); Hudspeth v. Guggenheim, Tex.Civ. App., 12 S.W.2d 238 (wr. dism.) Its application depends in each case on what was done. Wilson v. Abilene Independent School Dist., Tex.Civ.App., 204 S.W.2d 407 (err. ref., n. r. e.). In the case before us, the parties fully litigated the two issues in question. This is reflected by this court's prior opinion:

"We believe that the issues that are here decisive are: Do the Cash Surprise Bonus Cards of appellees constitute a trade secret; and, if so, was such obtained unfairly by appellant by means of a breach of confidence?"

The opinion then reviews the evidence and wealth of exhibits and the applicable law, and reaches the conclusion which was decisive of the appeal:

"Therefore, because we do not believe there is a trade secret here involved, and because we do not believe that any information that appellant's advertising agency might have used was improperly obtained or obtained through breach of confidence, we must hold that there was not sufficient reason or justification to

warrant the trial court in granting the injunction."

Appellees seek to avoid this holding by urging that they have now obtained jury findings as to ultimate facts, and that an additional party defendant has been added. We do not think that has any particular bearing on the res judicata question, because the evidence and established facts being the same, what matter if found by the court or the jury? On the issue of trade secret, the evidence is more voluminous, but its quality is unchanged, and no contention is made that there have been any additional developments or changes in the factual set-up which brought about the suit. On the issue of confidential relations the evidence is unchanged. And the addition of a party privy, appellant Furr's advertising agent, has not brought about any change in the facts passed on, and it does not in any way alter the question or issues of trade secret and confidential relationship.

In addition to our holding that the law of the case has been established, we are of the further opinion that the facts of the present trial do not permit appellees to recover on the theory of what they call "theft of trade secrets", or any other theory of protection of trade secrets, for the evidence on the present hearing fails to establish any confidential relationship existing between the parties for the breach of which an action would lie. Assuming a trade secret, the existence of some duty owed in connection therewith, and its breach, becomes our pertinent inquiry.

■■■ One who does not wish to make disclosure of his secret in return for the term protection of the patent laws, or otherwise protect it specifically by contract, can still be protected if his disclosure is made in confidence so as to place the other party under a duty to keep his secret. It is a well-settled rule that equity will grant relief when one breaches his confidential relationship in order to unfairly use a trade secret. Luccous v. J. C. Kinley Company, 376 S.W. 2d 336 (S.Ct.1964); Hyde Corporation v. Huffines, 158 Tex. 566, 314 S.W.2d 763; K & G Oil Tool & Service Co. v. G & G Fishing Tool Serv., 158 Tex. 594, 314 S.W. 2d 782. The owner of the secret must do something to protect himself. He will lose his secret by its disclosure unless it is done in some manner by which he creates a duty and places it on the other party not to further disclose or use it in violation of that duty. The rule of the American Law Institute Restatement of the Law, as set forth in Hyde v. Huffines, supra, by the Supreme Court, is:

> " 'One who discloses or uses another's trade secrets, without a privilege to do so, is liable to the other if (a) he discovers the secret by improper means, or (b) his disclosure or use *constitutes a breach of confidence reposed in him by the other in disclosing the secret to him* * * *.'  4 Restatement of Torts § 757." (Emphasis ours).

Hyde v. Huffines granted protection to the owner of a trade secret who had granted another the right to manufacture his secret, which was done for some two years, under a written licensing agreement. The contract was silent as to the secret being kept confidential, but the court held that an express agreement was not necessary where the actions of the parties, the nature of their arrangement, the "whole picture" of their relationship established the existence of a confidential relationship. It was noted that they were, under the licensor-licensee arrangement, "co-adventurers". The facts of the case left no doubt that a confidential relationship existed and that all parties understood that it existed when disclosure was made. Hyde v. Huffines says no express agreement is necessary, but it stands to reason that the confidence reposed in the other person must, in some way, be manifest —if not by words, then by the acts of the parties or the whole picture of their relationship. Confidential relationship is a two-way street: if the disclosure is made in confidence, the "disclosee" should be aware of it. He must know that the secret is being revealed to him on the condition he is

under a duty to so keep it. We belabored the point in this discussion because we do not believe that such was done in the case before us. We do not believe that the whole picture of the parties' dealings shows the existence of a confidential relationship. Further, if the owner of the secret intended that the disclosure be treated in confidence, such fact was not made known to the "disclosee", Furr's. There is no evidence to support the jury finding that there existed between the parties "a relation of trust and confidence at the time of the transactions had between them in 1959". Mrs. Hoese who, with her husband, owns the appellee companies, testified that she had confidence in Furr's and relied on their integrity. This we can well accept as true, but the fact remains that she did not in some manner make it known to Furr's that her secret was being revealed to them in trust. And, she did not participate in the 1959 transactions. The only person Furr's had dealings with was the salesman, and he testified (and the jury so found) that he did not ask them to treat his statements as statements made in confidence. The record reflects a salesman working hard to make a sale—a sale with no strings attached, so far as confidence was concerned. There was nothing about the transactions and dealings of the parties which would establish a confidential relationship, nor put Furr's on notice that such was intended. It was an arm's-length transaction which the jury found to be that of buyer-seller. Under such state of facts, we are of the opinion that such relationship as existed between the parties ended with the delivery of the materials purchased and the payment for them. That was in 1959, while this lawsuit is for breach of confidential relations alleged to exist in 1960. As stated, assuming a trade secret we are of the opinion that no confidential relationship existed between the parties; and absent such, appellees were not entitled to judgment for appropriation of a trade secret.

■■■ Appellees contend that there are other bases on which the judgment is sup-

portable, but we are of the opinion that if we are correct in our determination that no confidential relationship existed between the parties, then the record does not substantiate any actionable wrongs. The judgment cannot be supported on the basis of unfair competition, for while unfair competition can be actionable where a confidence is violated, or where there is a palming-off of one's goods for that of another, neither theory will stand here. The first we have already ruled out, and the palming-off theory is not in this case. Nor do we think that Gilmore v. Sammons, Tex.Civ.App., 269 S.W. 861, is applicable to the facts of this case. The wrong condemned in Gilmore v. Sammons was the conduct of Sammons in appropriating the news items of Gilmore and selling them in competition with Gilmore. Without going into the standing of that case in the light of more recent pronouncements, we simply note its inapplicability here, for there is no contention that Furr's ever sold or attempted to sell that which it is alleged to have appropriated, and we fail to see how it could make any difference that Furr's hired Webster to prepare the product for them. That brings us to another matter, that of substantiating the judgment on the theory of a conspiracy of Furr's and the Webster agency. "A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means." Bartelt v. Lehman, Tex.Civ.App., 207 S.W.2d 131 (err. ref.); Kingsbery v. Phillips Petroleum Co., Tex.Civ.App., 315 S.W.2d 561 (ref., n. r. e.). The necessary elements are not present in this case. It cannot be said that Furr's and Webster acted together in the use of the Cash Circle Card. Furr's hired Webster to produce the Cash Circle Card for them and paid him for it. After that, Furr's owned it outright and had sole control of its use. How they used it or whether they ever used it was not for Webster to say. It is the *use* of the card in 1960 which is the cause of action alleged

by appellees, as plaintiffs, and Webster was not acting with Furr's in such use.

The judgment of the trial court is reversed, the injunction dissolved, and judgment here rendered that appellees take nothing by their suit.