**A. C. CROUCH et al., Appellants,**

**v.**

**SWING MACHINERY COMPANY, Inc.,
Appellee.**

**No. 14933.**

Court of Civil Appeals of Texas,
San Antonio.

June 9, 1971.

John J. Clayton, San Antonio, for appellants.

Stolhandske, Simmons & Stolhandske, San Antonio, for appellee.

CADENA, Justice.

Defendants, A. C. Crouch and W. L. Bedford, appeal from an order temporarily enjoining them from soliciting the customers of, or contacting the suppliers represented by their former employer, Swing Machinery Company, Inc., plaintiff below.

Plaintiff alleged that Crouch had been its office manager, while Bedford had been one of plaintiff's salesmen. According to plaintiff's petition:

1. As office manager, Crouch occupied a position of trust and confidence, and had access to plaintiff's trade secrets, customer lists, mailing lists and price lists.

2. Bedford, as a salesman, had access to such information because he occupied a position of trust and confidence. At the time that he entered plaintiff's employ, Bedford agreed that he would not engage in a business competitive with plaintiff for a period of five years after termination of his employment.

3. Both Crouch and Bedford, after terminating their employment with plaintiff by resignation, were employed by Southwest Vacu-Blast and Industrial Sales, Inc., a newly organized company which was in direct competition with plaintiff. Both Crouch and Bedford immediately began to call upon the customers and accounts of plaintiff, soliciting their business. In soliciting plaintiff's customers, defendants made use of plaintiff's trade secrets.

At the outset, we affirm the order below insofar as it applies to William L. Bedford. The evidence shows that at the time he entered plaintiff's employ, Bedford signed an agreement not to engage in post-employment competition with plaintiff. Bedford has failed to present any evidence which even tends to indicate that such agreement is unreasonable, and the record discloses no reason why he should not be compelled to abide by his agreement pending trial on the merits.

Crouch never agreed not to compete with plaintiff. On the effective date of his resignation, Crouch called on plaintiff for his accrued salary. His salary was withheld until he signed an instrument stating that he had been entrusted with trade secrets, and that he agreed not to divulge them. Despite the circumstances under which the instrument was signed by Crouch, it is, perhaps, some evidence that he had, in fact, been entrusted with some trade secrets. But even if his agreement not to divulge such secrets is enforcible, it imposes on him no obligation greater than that which is imposed on him by the common law doctrine, which prohibits an ex-employee from disclosing, or using for his own benefit and to the detriment of his former employer, any confidential information obtained by virtue of his former employment. Hyde Corporation v. Huffines, 158 Tex. 566, 314 S.W.2d 763 (1958).

With reference to Crouch, we consider first the propriety of that portion of the order which prohibits him from "contacting" suppliers whom plaintiff represented in the San Antonio area. In this connection, plaintiff's pleadings fail to allege that the identity of such suppliers is not generally known to all persons engaged in the same business as plaintiff. Plaintiff's evidence discloses that the identity of such suppliers can be easily ascertained by any interested person merely by referring to trade journals. In fact, under the terms of plaintiff's sales representative agreement with one supplier, plaintiff was under a duty to advertise, at its own expense, by

inserting at least one display listing in the classified section (yellow pages) of the telephone directories in all cities within plaintiff's trade area which prominently displayed the name of such supplier. We find nothing in the record to indicate that such information is not of a routine nature. Such information is nothing more than that which is necessarily known to all persons engaged in the business. Although there are cases where courts have gone to rather extreme lengths in protecting business information which represents nothing more than the normal accretion of day-to-day routines, 43 A.L.R.2d, Anno: Employee—Restrictive Covenant—Area, pp. 94, 168–70 (1955), we do not believe that knowledge of the ordinary routines of a business is sufficient to justify a restriction on a person's post-employment economic mobility.

In reaching the conclusion that the temporary injunction prohibiting defendant, Crouch, from contacting the suppliers must be dissolved, we do not overlook the fact that we are reviewing the action of the trial court in granting a temporary injunction. As our Supreme Court has said, we may not reverse the decision below unless it appears that the trial court abused its discretion, and "there is no abuse of discretion in the issuance of a writ if the petition alleges a cause of action and the evidence adduced tends to sustain it." Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549, 552 (1953). Admittedly, the trial court has a wide discretion in determining whether a temporary injunction shall be granted or denied. But to authorize the issuance of a temporary injunction, the applicant has the "burden of not only pleading facts which, if proved, would entitle it to a permanent injunction, but, as well, of offering evidence tending to prove its probable right thereto on final hearing and of probable injury in the interim." Millwrights Local Union No. 2484 v. Rust Engineering Co., 433 S.W.2d 683, 686 (Tex.1968). Far from tending to show a breach of any duty by Crouch, the evidence merely shows that Crouch, after he left plaintiff's employ, was making use of information which is necessarily known to all persons in the trade. What is known to all cannot be converted into confidential information worthy of equitable protection by merely whispering into the ear of even the most highly trusted employee.

■ The customer list cases stand on the periphery of that area of the law which can best be described as "the trade secret quagmire." The confusion created by decisions concerning the use of customer lists and customer contracts by ex-employees is due to the fact that the decisions seemingly turn on arbitrary distinctions unrelated to trade practices.[1]

In the absence of an express agreement restricting the post-employment activities of an employee, it is generally held that an ex-employee is free to compete with, and to solicit the customers of, his former em-

---

1. In the numerous decisions in this area will be found language which at least tends to support each of the following statements: (1) Practically all customer lists will be protected; (2) practically no such lists will be protected; (3) only written lists will be protected; (4) only lists of retail customers will be protected. Notes: Protection and Use of Trade Secrets, 64 Harv.L.Rev. 976, 977 (1951). The American Law Institute makes the availability of injunctive relief depend upon the length of an employee's memory. "The agent is entitled to use general information concerning the method of business of the principal and the names of the customers retained in his memory, if not acquired in violation of his duty as agent." Restatement (Second), Agency Sec. 396 (1958). For criticisms of the "memory" exception to the general rule that a person is free to compete with his former employer, see 2 Callman, Unfair Competition and Trademarks, 844, 845 (2d ed. 1950); McClain, Injunctive Relief Against Employees Using Confidential Information, 23 Ky.L.J. 248, 259 (1935). Many courts have decided cases by applying the memory rule. See Blake, Employee Agreements Not to Compete, 73 Harv.L.Rev. 625, 655 (1960).

ployer. Therefore, what is described as an "ordinary" customer list is not considered a trade secret. Texas Shop Towel v. Haire, 246 S.W.2d 482, 485 (Tex.Civ.App. —San Antonio 1952, no writ); 28 A.L.R. 3d, Anno: Customer List—As Trade Secrets—Factors, pp. 7, 18 (1969).

However, the former employer will be protected in some situations. An ex-employee will not be permitted to make use of a secret list of customers, nor of any other confidential information obtained about the customers by virtue of his former employment. This rule has been applied in a multitude of cases. In addition, there is considerable language in the decisions to the effect that injunctive relief will be granted when the defendant occupied a fiduciary relationship, such as that occupied by an officer of a corporation or other employee who has been the repository of special trust. 73 Harv.L.Rev. 625, 655, supra.

But neither of these two "exceptions" to the general rule against restraints on post-employment activities will explain the decisions. Admittedly, the courts have shown a willingness to protect secret customer lists and to prevent the use by an ex-employee of confidential information concerning the customers of his former employer. But there is no reliable test for determining when a list is secret, nor is there agreement as to the type of customer information which will be considered confidential. Further, the employer has been protected in many cases where the identity of the customers could not be classified as secret, as in the numerous cases where the courts have enjoined salesmen assigned to service a regular route. 43 A.L.R.2d, Anno: Employee—Restrictive Covenant—Area, pp. 94, 316–21 (1958). Nor is the "fiduciary relationship" rationale particularly helpful. The fact that certain information is divulged only to the most trusted employees may be evidence of its confidential nature, but not all information revealed to such employees is necessarily confidential.

Where the list of customers is not secret, some courts have been inclined to grant relief where the employee's relationships with customers have been such as to create a substantial risk that he may be able to divert all or a part of their business. Absent secrecy, it is in cases where the employer's sole, or at least major, contact with his customers is through agents that there exists a real danger that the customers will come to regard their relationship with the agent as more important than the quality of products or services furnished by the employer, so that some of the customers may be persuaded, or even be willing, to forsake the employer and follow the employee. See Arthur Murray Dance Studios of Cleveland v. Witter, 105 N.E.2d 685, 705–709 (Common Pleas, Ohio 1952), for an enlightening discussion of the customer list problem. The "customer contact" approach is discussed in 73 Harv.L. Rev. 625, 657–61, supra.

It may be, as Crouch insists, that there is no evidence tending to show that the identity of plaintiff's customers is a secret, since plaintiff's president admitted potential buyers of the products sold by it could be ascertained by consulting the telephone directory or by touring the industrial section of a city. However, there is evidence to the effect that the important information relates not to the identity of particular businesses which might purchase plaintiff's products, but the identity of officers or other employees of such concerns who make the decisions concerning the purchase of such equipment. There is also evidence which at least tends to show that ascertaining the identity of such key personnel requires the expenditure of considerable time and money. While one may be justified in viewing with skepticism plaintiff's insistence that purchasers of industrial equipment try to keep the identities of their purchasing agents secret, such evidence stands uncontradicted.

In addition, there is testimony, uncontradicted, that because Crouch occupied a position of confidence, he acquired informa-

**608**

tion concerning the credit ratings of plaintiff's customers and other useful customer data which, according to plaintiff's president, were strictly confidential and of great value to plaintiff in the conduct of his business. While the nature of such data was described in rather general terms, and the testimony of plaintiff's president concerning its confidential nature is not completely persuasive, in view of his insistence that such things as "telephone manners" and general accounting principles were also "secrets," we believe that such evidence, standing unchallenged, prevents the conclusion that the trial court abused its discretion in issuing the temporary injunction. See Ellis, Trade Secrets, Sec. 79 (1953).

That portion of the temporary injunction which prohibits Crouch from contacting plaintiff's suppliers is dissolved. In all other respects the order appealed from is affirmed.

The costs of this appeal are taxed one-half to appellant, W. L. Bedford, one-fourth to appellant, A. C. Crouch, and one-fourth to appellee, Swing Machinery Company, Inc.