Victor E. RIMES et al., Appellants,

v.

**CLUB CORPORATION OF
AMERICA, Appellee.**

No. 19011.

Court of Civil Appeals of Texas,
Dallas.

Sept. 16, 1976.

Rehearing Denied Oct. 14, 1976.

Harry W. Margolis, Margolis, Staffin & Schendle, Dallas, for appellants.

E. Lee Haag, III, Smith, Smith, Dunlap & Canterbury, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

Victor E. Rimes, Steve Rodgers, and Club Development, Inc. appeal from a temporary injunction which enjoins them from operating a business in violation of restrictive covenants contained in previous employment contracts between Rimes and Rodgers, as employees, and Club Corporation of America, Inc., (hereinafter called C.C.A.), as employer. The principal grounds urged by appellants as the basis for their appeal are that: (1) The trial court's injunction order creates a period of time for restraining competition which is greater than the two-year period provided in the respective restrictive covenant; and (2) the trial court erred in enforcing the restrictive covenants which are an illegal restraint of trade under Texas anti-trust laws and which do not fall within any of the exceptions concerning protectable interests or confidential infor-

mation. We hold that the trial court erred in issuing an injunctive order which expanded the time period restricting competition beyond the time expressly contained in the employment contracts and in finding certain information was confidential and, therefore, was within C.C.A.'s protectable interests. Accordingly, we reverse the trial court's judgment and order the temporary injunction dissolved.

C.C.A. is a Texas corporation which owns and also manages country clubs. On separate occasions Victor E. Rimes and Steve Rodgers executed employment contracts to perform services for C.C.A. Each of the employment contracts contains a restrictive covenant prohibiting the employee from engaging in competition with C.C.A. for a period of two years following termination for any reason of the employment contracts. Rodgers terminated his employment with C.C.A. in June 1973. In January 1972, Rimes was transferred from C.C.A. in Dallas, Texas, to work for a wholly-owned subsidiary, Kingwood Country Club, Inc., in Houston, Texas. On May 15, 1974, Rimes terminated his employment with Kingwood. After leaving his employment with Kingwood, Rimes worked for a local developer and was given the task of creating and running racquet clubs to be included in real estate developments throughout the country. In September 1974, a corporation called Club Development, Inc. (hereinafter called C.D.I.) was formed for this purpose and Rimes became a minority stockholder. In May 1975, Rimes became the sole stockholder of C.D.I. by purchasing other stockholders' interests. Rimes, through C.D.I., attempted to locate clubs in need of management services in the summer of 1975. Rodgers joined C.D.I. in September 1975, approximately two years and two months following his final termination with C.C.A. C.D.I. consummated its first management contract in October 1975, and commenced its management duties on November 1, 1975. Prior to the time that C.D.I. was created, C.C.A. was the only organization in the entire United States which furnished country club management services to that particular industry.

On March 10, 1976, C.C.A. filed this suit in the district court seeking injunctive relief to enforce the noncompetitive provisions of the employment contracts. Following a hearing on April 21, 1976, the trial court found: (1) Rimes did form a corporation for the purpose of entering into competitive business with C.C.A.; (2) this action was in violation of the employment agreement in that the corporation did actively seek and obtain business relationships with two or more country clubs in direct competition with C.C.A.; and (3) Rimes, Rodgers, and Club Development, Inc. are unfairly competing with C.C.A. in that confidential information was acquired by Rimes and Rodgers while in the employment of C.C.A. and that they did use such information in competition with C.C.A. in violation of the employment agreement. Accordingly, the trial court ordered a writ of injunction to issue pending the final hearing on the merits. Thereafter, the trial court granted a supersedeas bond pursuant to Tex.R.Civ.P. 364(e) thereby suspending the injunction pending appeal.

■■■ Our supreme court has laid down basic rules to govern our judicial review of the trial court's order granting a temporary injunction. The paramount issue on appeal is whether the trial court clearly abused its discretion in issuing the writ. *Transport Co. of Texas v. Robertson Transport Co.,* 152 Tex. 551, 261 S.W.2d 549, 552 (1953). The temporary injunction will not be issued unless the applicant shows a probable right to a permanent injunction on the final trial of the merits. *Sun Oil Co. v. Whitaker,* 424 S.W.2d 216, 218 (Tex.1968). The applicant for such injunctive relief must demonstrate his right to preserve the status quo of the subject matter of the litigation pending a final trial of the case on its merits. *Transport Co. of Texas v. Robertson Transport Co., supra.* The party seeking the injunction must show that he will suffer irreparable injury if the injunction is not granted since there is no adequate remedy at law. *Gulf Oil Corp. v. Walton,* 317 S.W.2d 260, 263 (Tex.Civ.App.—El Paso 1958, no writ).

In their primary points on appeal, appellants contend that the trial court abused its discretion by granting injunctive relief which extended the two-year term of the restrictive covenants contained in the agreements between the parties. As to appellant Rodgers, the two-year period provided in the agreement between C.C.A. and Rodgers terminated in June 1975 or approximately nine months prior to the filing of the suit. Concerning appellant Rimes the situation is more complicated. It is undisputed that Rimes discontinued his employment with C.C.A. in Dallas in January 1972, and, therefore, the two-year period of noncompliance, if computed from that date, expired in January 1974. However, Rimes went to Houston and was employed by Kingwood Country Club, Inc., which was shown to be a subsidiary of C.C.A. Rimes did not terminate his employment with Kingwood until May 15, 1974. Dealing with a question of who would be the "employer" Rimes's contract with C.C.A. provided:

> The word "employer" as used in this contract shall include Club Corporation of America . . . or any company that said Club Corporation of America may designate. It is understood and agreed that Club Corporation of America may designate any company of any kind affiliated with or owned, operated, managed or supervised by said Club Corporation of America . . . ..

■■■ Rimes argues that, under the terms of the contract, C.C.A. did have the right to designate Kingwood as an employer but that a designation never took place. He relies upon *Wright Hydraulics, Inc. v. Womack Machine Supply Co.,* 482 S.W.2d 34 (Tex.Civ.App.—Fort Worth 1972, no writ) which holds that the two-year period in a noncompetitive agreement begins to run from the date of separation from the parent corporation and not from the subsidiary. C.C.A. attempts to distinguish the case at bar on the grounds that in *Womack* there was no contract provision designating an affiliated corporation as a beneficiary of the contract as we have here. Although the two cases are factually distinguishable,

we do not agree that a different legal result follows in this case. Even assuming that Kingwood could be considered an automatic designee by implication, it remains that Kingwood is a separate entity and not a party to this lawsuit. Notwithstanding the fact that a parent corporation owns the entire capital stock of the subsidiary corporation, the two corporations are separate legal entities, and, whatever may have been the motive leading to their separate existence, they can only be regarded as separate entities for the purpose of legal proceedings. *Conley v. Mathieson Alkali Works,* 190 U.S. 406, 23 S.Ct. 728, 47 L.Ed. 1113 (1903). A "subsidiary corporation" is one which is controlled by another corporation by reason of the latter's ownership of at least a majority of the shares of the capital stock. Notwithstanding two corporations may be so related, each is deemed to have an independent existence. *International Order of Twelve Knights and Daughters of Tabor v. Fridia,* 91 S.W.2d 404, 405 (Tex. Civ.App.—Waco 1936, no writ). The time period for Kingwood's right to enforce its covenant of noncompetition, if any, is a question separate and apart from the time period applicable to C.C.A. Since there is no provision in the contract which would delay commencement of the running of the two-year period, the commencement date applicable to C.C.A. is January 1972 when Rimes left its employment at Dallas, Texas.

Even assuming the validity of C.C.A.'s argument that the two-year noncompetitive term did not begin to run until Rimes left the employment of Kingwood on May 15, 1974, such period would have terminated on May 15, 1976, so that the order of the trial court, dated May 6, 1976, would have been effective against Rimes for a period of nine days only, and the period has now expired. Consequently, as to both Rimes and Rodgers, the two-year noncompetitive agreement contained in each employment contract with C.C.A. is no longer effective.

C.C.A. seeks to avoid the consequences of the undisputed factual situation concerning the expiration of the prohibited two-year period by contending that the trial court and the appellate court had authority to extend the time period for noncompetition beyond the period contained in the contractual agreement notwithstanding the injunction suit was filed after the expiration of the two-year period. As a basis for this argument, C.C.A. relies upon only one case, *Premier Industrial Corp. v. Texas Industrial Fastener Co.,* 450 F.2d 444 (5th Cir.1971) wherein that court extended an injunction beyond the two years provided in the contractual agreement because the court had stayed injunctions below pending appeal and a final adjudication. Thus, *Premier* is distinguishable factually from the situation before us and is, therefore, not authoritative in this case.

■ The supreme court has prescribed the law in this area to be that a court will not extend the period provided in a restrictive covenant contained in an employment contract. In *Weatherford Oil Tool Co. v. Campbell,* 161 Tex. 310, 340 S.W.2d 950, 952 (1960) the employer sought to enforce a one-year restrictive covenant. The supreme court held that the lower courts were in error for not granting modified injunctive relief, but since the one-year time period provided in the restrictive covenant had expired, the issue was "moot" for appellate review. By so holding the supreme court followed an age-old principle that courts must enforce contracts as written by the parties and cannot rewrite the contract. *Grissom v. Southern Farm Bureau Casualty Insurance Co.,* 476 S.W.2d 448, 450 (Tex.Civ. App.—Waco 1972, writ ref'd n.r.e.). Here, the parties entered into a contract providing for a noncompetitive period following cessation of employment and such period is now past which causes the issue to become moot. Therefore, the trial court clearly abused its discretion by entering this injunctive order because C.C.A. could not possibly show a probable right of recovery upon the trial of the merits in the permanent injunction hearing.

Appellants also contend, by appropriate points of error, that the trial court was in error in granting injunctive relief by prohibiting appellants from appropriating con-

fidential information in the form of words and phrases since such words and phrases cannot legally fall within the category of trade secrets. That part of the trial court's injunction enjoins appellants "from competing with plaintiff by the use of confidential information acquired while in a confidential relationship with plaintiff." The terms of the agreement between Rimes and Rodgers and C.C.A. concerning confidential information are noted in the margin.[1]

C.C.A. takes the position that the use of certain words and phrases by appellants which C.C.A. uses in its business constitutes unfair competition because these are unique techniques and only used previously by C.C.A. and, therefore, are to be considered "trade secrets." The alleged trade secrets are evidenced by words and phrases and associated meanings such as: (1) Board of governors; (2) Role playing; (3) Membership matriculation; (4) Question and answer sheets; (5) Default provisions; and (6) Weekly accounting systems. We cannot agree with C.C.A.'s position.

 A trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. *Elcor Chemical Corp. v. Agri-Sul, Inc.*, 494 S.W.2d 204, 211 (Tex.Civ. App.—Dallas 1973, writ ref'd n.r.e.). It is simply a private matter which is kept from the general public and is not susceptible to general knowledge. In order to be a trade secret, there must be a substantial element of secrecy. *Furr's, Inc. v. United Specialty*

*Advertising Co.,* 338 S.W.2d 762, 765 (Tex. Civ.App.—El Paso 1960, writ ref'd n.r.e.). The record reveals that the words and phrases alleged to be trade secrets are frequently used in soliciting clients and that no effort is made by C.C.A. to maintain an element of secrecy concerning these phrases. C.C.A. does not contend that the words and phrases were invented by them originally. The record reveals that many organizations within the country club industry throughout the country used these and similar terms.

In *Furr's, Inc. v. United Specialty Advertising Co.,* 385 S.W.2d 456, 459 (Tex.Civ. App.—El Paso 1964, writ ref'd n.r.e.), *cert. denied,* 382 U.S. 824, 86 S.Ct. 59, 15 L.Ed.2d 71 (1965), the court held that the owner of a trade secret must do something to protect itself from the use of such secret. The owner will lose his secret by his disclosure unless in some manner he creates a duty and places that duty upon another not to disclose or use such secret. It has been held that conduct on the part of the employee revealing or using information gained in the course of his employment is not actionable when in fact he did not know his employer desired such information to be kept secret. *Lamons Metal Gasket Co. v. Traylor,* 361 S.W.2d 211, 213 (Tex.Civ.App.— Houston 1962, writ ref'd n.r.e.). Since C.C.A. freely used this information in public, its employees could not be required to keep the same information secret.

 C.C.A. relies upon *Orkin Exterminating Co. v. Wilson,* 501 S.W.2d 408, 411 (Tex.Civ.App.—Tyler 1973, writ dism'd) as

---

1. (h) That I will keep secret the names of, or any other information relative to, any past, or prospective security holders, borrowers, and all other business customers and associates of the employer, as well as any and all knowledge as to such subject, and as to any loans, earnings, finances and all other matters which I may acquire during my employment.

(i) That I will not keep and/or use any papers, records or any information whatsoever relative to any of the matters referred to in the preceding paragraph, nor will I furnish or make available such papers or information to any other person; that I will not engage, directly or indirectly, in any endeavor to persuade any

security holder, borrowers, customers, associates or employees of the employer to do anything which might be to the disadvantage of the employer.

(j) Whereas, the employer is the only company that has been able to design, construct, promote and operate private clubs on the continuing profitable basis; and whereas, through my association with the employer I have acquired and will acquire many techniques directly responsible for this success; I agree that all terms of paragraph (h) and (i) shall remain in full force and effect for a period of two (2) years from the termination of my employment
. . . .

authority for the proposition that since employees acquire intimate knowledge of the employer's business, a former employee's use of these business techniques and confidential business secrets causes the employee to lose not only potential customers but also his proprietary interest in the secrets. While we agree with this principle of law, it is not applicable here for the simple reason that C.C.A. made no effort to keep their alleged trade secrets from the knowledge of the general public. From our examination of this record, we hold that the trial court erred in enjoining appellants from appropriating trade secrets from C.C.A.

Since it is obvious from this record that the express time limitations agreed to by the parties in the employment contracts dealing with restrictive covenants has expired and appellants are, therefore, no longer bound by the restrictions contained in the contracts, and since C.C.A. has failed to carry its burden of establishing a deprivation of trade secrets by appellants, we find it unnecessary to pass upon the remaining points advanced by appellants or the cross-points of appellee. Accordingly, we reverse the order of the trial court and dissolve the injunction.

Reversed and rendered.