Robert L. MERCER, Plaintiff-Appellant-Cross Appellee,

v.

C. A. ROBERTS COMPANY, Defendant-Appellee-Cross Appellant.

No. 76–2651.

United States Court of Appeals,
Fifth Circuit.

April 6, 1978.

---

Tom Thomas, Dallas, Tex., for plaintiff-appellant-cross appellee.

Wentworth T. Durant, Ronald G. Williams, Dallas, Tex., for defendant-appellee-cross appellant.

Before THORNBERRY, AINSWORTH, and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

This diversity dispute [1] centers around an oral employment agreement, its modification, and the fallout resulting therefrom. Bad feelings abound between former employee and former employer, and we resolve

---

1. We apply the law of Texas, the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

the dispute by affirming the district court's decision that both sides take nothing.

Defendant C. A. Roberts Co., an Illinois corporation, distributes tubing, pipes, and similar metal goods. Although the company has done business in Texas for more than 40 years, it did not have an employee in the state until July 1968, when it hired plaintiff Mercer. A Dallas sales office was established a few months later, with Mercer as its manager. The employment agreement between the parties was oral and was without a definite term of duration; however, it was understood that Mercer would develop the Dallas office to maturity, a process that would take from three to five years. Mercer was well-suited for the job, having left the employ of one of Roberts' competitors to assume this position.

In August 1970, it was agreed that Mercer would receive incentive compensation in addition to his regular salary. This bonus plan consisted of fifteen per cent of the Dallas office's contribution to the company's annual profits. The bonus was payable quarterly and retroactive to January 1, 1970. Again there was no written agreement. More than four years later, in August 1974, Mercer was informed of a change in his compensation formula retroactive to January 1 of that year. Apparently the unanticipated revenue from the Dallas office resulted in Mercer's compensation under the formula being disproportionate to the compensation received by other employees. Dissatisfied with this revision, Mercer resigned on January 20, 1975.

Upon leaving the company, Mercer took with him a "customer data book" containing the names of all his customers, the types of materials purchased by each, their purchasing habits, information on various suppliers, and the like. He also took the company's price book, which contained a list of every item it sold and the price. Mercer has since engaged in a competition with Roberts and has solicited business from

Roberts' customers in the Dallas area. The day after he resigned, he formed a Texas corporation—C. A. Roberts Co., Inc.—with himself as sole stockholder. However, pursuant to the Texas "assumed name" statutes,[2] he filed a certificate with the clerks of Dallas and Tarrant Counties to do business under the name "Mercer Metals." Defendant Roberts had never registered or reserved its corporate name with the Texas Secretary of State.[3] Mercer subsequently dissolved his corporation and now makes no claim to its name.

Mercer filed this suit on the day of his resignation, seeking approximately $37,000 in unpaid salary and bonuses, plus attorney's fees. Roberts filed an answer and counterclaimed for injunctive relief and some $35,000 in damages on the theory that Mercer had breached his fiduciary duty to the company by appropriating trade secrets and engaging in unfair competition. The district court held that the employment contract was unenforceable under the statute of frauds, Tex.Bus. & Comm.Code § 26.01, and that Mercer had not taken any trade secrets, engaged in unfair competition, or breached a fiduciary duty. Accordingly, judgment was entered for Roberts on the complaint and for Mercer on the counterclaim. Mercer brought this appeal, and Roberts cross-appealed.

## I. STATUTE OF FRAUDS

The Texas "statute of frauds" is found in Tex.Bus. & Comm.Code § 26.01, which provides in pertinent part:

(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

---

2. Tex.Bus.Corp. Act art. 2.05; Tex.Rev.Civ. Stat.Ann. art. 5924 *et seq.* The Texas Legislature recently overhauled the assumed name requirements by adding Chapter 36 to the Business and Commerce Code. Session Laws 65th Legislature, Ch. 403, at 1095 (1977).

3. Tex.Bus.Corp. Act art. 2.07.

(b) Subsection (a) of this section applies to . . .

(6) an agreement which is not to be performed within one year from the date of making the agreement;

. . . .

In interpreting this provision,[4] the Texas courts have consistently held that where the time for performance of an oral agreement—including an oral employment agreement—is uncertain and performance can conceivably occur within one year, the statute of frauds is inapplicable, even if performance within the year is highly improbable. *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773 (Tex.1974); *Bratcher v. Dozier*, 162 Tex. 319, 346 S.W.2d 795 (1961); *Hall v. Hall*, 158 Tex. 95, 308 S.W.2d 12 (1957).

■ However, when no time for performance has been specified in the agreement, a reasonable time will be implied on the basis of all circumstances surrounding adoption of the agreement, the situation of the parties, and the subject matter of the agreement. *Hall v. Hall, supra; Krueger v. Young*, 406 S.W.2d 751 (Tex.Civ.App.— Eastland 1966, writ ref. n. r. e.); *Adams v. Big Three Indus., Inc.*, 549 S.W.2d 411 (Tex. Civ.App.—Beaumont 1977, writ ref. n. r. e.). If the agreement, so interpreted, cannot be performed within one year, it comes within the statute of frauds and is unenforceable.

■ When the agreement is unwritten and its interpretation depends on disputed facts, the question of "reasonable duration" is one of fact to be determined by the trier of fact. *Adams v. Big Three Indus., Inc., supra; McRae v. Lindale Ind. School Dist.*, 450 S.W.2d 118 (Tex.Civ.App.—Tyler 1970,

writ ref. n. r. e.). That is the situation in the instant case, and the district court found that the agreement was not performable in one year because the parties contemplated that Mercer would develop the Dallas office to maturity, a process that would take three to five years. That finding is not clearly erroneous. Rule 52(a), Fed.R. Civ.P.[5]

■ Given this finding and the above-stated Texas law, it is clear that the employment agreement is within the statute of frauds and thus unenforceable. Insufficiency of a contract on such grounds precludes both recovery for specific performance and damages for breach of contract. *Wilson v. Fisher*, 144 Tex. 53, 188 S.W.2d 150 (1945); *Edward Scharf Associates, Inc. v. Skiba*, 538 S.W.2d 501 (Tex.Civ.App.— Waco 1976, no writ).

■ Mercer argues, however, that the statute of frauds does not apply because the agreement has been fully performed. The Texas courts have, in many situations, held that full or partial performance of an oral agreement by one party precludes invocation of the statute of frauds by the other. *E. g., Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 114 (1921) (contract for sale of realty); *Kirk v. Beard*, 162 Tex. 144, 345 S.W.2d 267 (1961) (agreement to make mutual wills that disposed of real property); *Oak Cliff Realty Corp. v. Mauzy*, 354 S.W.2d 693 (Tex.Civ.App.—Dallas 1962, writ ref. n. r. e.) (lease of real property); *Vick v. McPherson*, 360 S.W.2d 866 (Tex. Civ.App.—Amarillo 1962, writ ref. n. r. e.) (purchase of insurance agency); *Wynne-*

---

**4.** The statute of frauds was first enacted in Texas on January 8, 1840, when, of course, Texas was a republic. Acts of 1840, at 28; Gammel's Laws of Texas, vol. 2, at 202. It followed the statute of King Charles II, 29 Car. II, c. 3, § 4 (1677), and provided that no action shall be brought "upon any agreement which is not to be performed within the space of one year from the making thereof" unless the "agreement upon which action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person by him thereunto authorized." The statute appeared in various codifications of Texas law

over the years, finally coming to rest in Art. 3995, Tex.Rev.Civ.Stat., in 1925. There it remained until 1967 when the Legislature enacted the Business and Commerce Code, the first code to be passed under the state's statutory revision program.

**5.** A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, after examining the entire record, is left with a "definite and firm conviction that a mistake has been committed by the district court." *Causey v. Ford Motor Co.*, 516 F.2d 416, 420 (5 Cir. 1975).

wood State Bank v. Brigham, 434 S.W.2d 874 (Tex.Civ.App.—Texarkana 1968, writ ref. n. r. e.) (agreement of bank to purchase credit life insurance for maker of note). To justify such equitable intervention by the courts in light of a clear statute, there must be something more than a mere wrong or breach of contract. The situation must be such that nonenforcement of the contract would itself plainly amount to fraud. *Meyer v. Texas Nat'l Bank of Commerce*, 424 S.W.2d 417 (Tex.1968).

Oral employment agreements, however, have been treated as contracts of a different color. Partial or full performance of such agreements by an employee has been held insufficient to render the statute of frauds inoperative. *E. g., Paschall v. Anderson*, 127 Tex. 251, 91 S.W.2d 1050 (Tex.Comm.App.1936, opinion adopted); *Chevalier v. Lane's, Inc.*, 147 Tex. 106, 213 S.W.2d 530 (1948); *Collins v. McCombs*, 511 S.W.2d 745 (Tex.Civ.App.—San Antonio 1974, writ ref. n. r. e.); *Choleva v. Spartan Aviation, Inc.*, 524 S.W.2d 739 (Tex.Civ.App. —Corpus Christi 1975, no writ). Nonetheless, there are circumstances in which the employee's performance of the agreement may trigger equitable relief. *See Paschall v. Anderson, supra*, 91 S.W.2d at 1051; *Chevalier v. Lane's, Inc., supra*, 213 S.W.2d at 534. However, the Texas courts found no such circumstances present in the above-cited cases, and we find none here.

The result may seem harsh, since Mercer worked from January to August 1974 under the assumption that he would receive his incentive pay. In August the company altered the compensation formula and made the change retroactive to January 1. However, the Texas courts have made clear that an oral agreement within the statute of frauds will not be enforced except in egregious situations. For example, in *Collins v. McCombs, supra*, Collins entered into an oral agreement with McCombs under which he would receive a set salary for operating a miniature train ride. At the end of three years, he would begin to share in the profits of the business. The three years passed, with Collins receiving the agreed upon salary, but when he approached McCombs about receiving a portion of the business, McCombs told him he "was not ever going to get" such an interest. The court held the contract was within the statute of frauds and thus unenforceable.

The instant case is similar. Mercer worked from January to August expecting to receive his incentive pay. During that time he was paid his regular salary. However, in August he was informed that he would not receive the commission, just as Collins was told he would not receive an interest in the train business. Mercer was arguably earning the commission during the eight-month period, but Collins, too, was in a real sense earning his share of the business. The Texas court in *Collins* was not willing to upset the clear legislative policy embodied in the statute of frauds, and we are unwilling to do so in the instant case. Accordingly, we hold the oral agreement unenforceable.[6]

## II. TRADE SECRETS

When Mercer left the company, he took with him a "customer data book" contain-

---

**6.** The dissent would go well beyond *Collins* and hold the agreement enforceable, but it does not even attempt to distinguish that case. As pointed out previously, Texas courts have recognized that an agreement may be enforced where nonenforcement would amount to fraud. *Chevalier v. Lane's, Inc., supra; Paschall v. Anderson, supra.* However, in neither of those cases did the court enforce the agreement; moreover, the court in *Collins*, faced with circumstances at least as harsh as those in the instant case, held the contract unenforceable. Were we writing on a clean slate, the dissent's position would certainly be a tenable one, but

being *Erie*-bound, we cannot ignore the parameters of the Texas case law.

Mercer also argues that payment of compensation on a monthly or annual basis removes the contract from the statute of frauds, citing *Miller v. Riata Cadillac Co., supra.* That case, however, is wholly inapposite, and it has been held that the fact that payment is made monthly does not take an employment agreement out of the statute of frauds. *Jackman v. Anheuser-Busch*, 162 S.W.2d 744 (Tex.Civ.App.—Dallas 1942, writ ref'd). This argument is without merit.

ing an alphabetical listing of Roberts' customers, with notations stating the type and amount of material purchased, its price, addresses of the purchaser, and names of its agents; a "price book" listing all of Roberts' products and prices; and related information including Roberts' analysis of the company's suppliers. Roberts argues that these were confidential materials containing valuable trade secrets and that Mercer took them in breach of a fiduciary duty and used them in unfair competition against the company.

■ Our initial inquiry is whether a confidential relationship existed between Mercer and Roberts, for Texas follows the rule that one is liable for disclosure of trade secrets (1) if he discovers the secret by improper means or (2) his disclosure constitutes a breach of confidence. *Hyde Corp. v. Huffines*, 158 Tex. 566, 314 S.W.2d 763, 769 (1958). Only the second possibility is at issue here.

■ The district court found that the parties did not agree that the material was to be confidential, but there need not be such an express agreement as to confidentiality. *Hyde Corp. v. Huffines, supra* at 770. The law will imply as part of the employment contract an agreement not to disclose information which the employee receives as an incident of his employment "if the employee knows that his employer desires such information be kept secret, or if, under the circumstances, he should have realized that secrecy was desired." *Lamons Metal Gasket Co. v. Traylor*, 361 S.W.2d 211, 213 (Tex.Civ.App.—Houston 1961, writ ref. n. r. e.).

■ It is clear that not all employment relationships are confidential. *Rimes v. Club Corp. of America*, 542 S.W.2d 909 (Tex.Civ.App.—Dallas 1976, writ ref. n. r. e); *Furr's, Inc. v. United Specialty Advertising Co.*, 385 S.W.2d 456 (Tex.Civ.App.— El Paso 1964, writ ref. n. r. e.), *cert. denied*, 382 U.S. 824, 86 S.Ct. 59, 15 L.Ed.2d 71 (1965). When an employee acquires an inti-

mate knowledge of the employer's business, however, the relationship can be deemed confidential. *Thermotics, Inc. v. Bat-Jac Tool Co.*, 541 S.W.2d 255 (Tex.Civ.App.— Houston [1st Dist.] 1976, no writ); *Orkin Exterminating Co. v. Wilson*, 501 S.W.2d 408, 411 (Tex.Civ.App.—Tyler 1973, writ dism'd); *Rimes v. Club Corp. of America, supra* at 914 (dictum).

■ While there is no doubt that Mercer had gained an "intimate knowledge" of Roberts' operations, we do not think that a confidential employment relationship existed. Mercer was not informed that the information was to be kept secret, and under the circumstances he could have reasonably assumed that the material was not confidential. The district court found that one of Mercer's assets as a new employee was his ability to retain a substantial number of customers in the area that he had served while working for one of Roberts' competitors. He thus brought considerable information about these customers to Roberts and apparently saw nothing wrong with taking similar information with him when he struck out on his own.[7]

■ Alternatively, we hold that the information in question is not a trade secret under Texas law. At the outset, it should be noted that Roberts' price list was admittedly not kept from competitors and thus cannot be a trade secret. *Rimes v. Club Corp. of America, supra; Research Equipment Co. v. Galloway*, 485 S.W.2d 953 (Tex. Civ.App.—Waco 1972, no writ). Moreover, it has been held that a mere list of customers does not constitute a trade secret. *SCM Corp. v. Triplett Co.*, 399 S.W.2d 583 (Tex. Civ.App.—San Antonio 1966, no writ); *Gaal v. BASF Wyandotte Corp.*, 533 S.W.2d 152 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ); *Research Equipment Co. v. Galloway, supra*.

■ Roberts contends that its own analysis of suppliers and the specific needs and buying habits of various customers are trade secrets. There is no doubt that this

---

**7.** Moreover, Roberts obviously benefited from Mercer's prior knowledge of customers and

their needs and should not be heard to complain now that the shoe is on the other foot.

information would greatly aid a would-be competitor, but we cannot say it rises to the level of a trade secret. In *Brooks v. American Biomedical Corp.*, 503 S.W.2d 683 (Tex. Civ.App.—Eastland 1973, writ ref. n. r. e.), the court held that credit information regarding prices, courier routes, and customers of a business, as well as the employees of those customers, did not constitute a trade secret. The court stressed that these matters "are generally known to any person engaged in this business or can be ascertained by an independent investigation." *Id.* at 685.[8] Similarly, we think that much of the information contained in the material taken by Mercer could be obtained from other sources. The district court so found, and the finding is not clearly erroneous. It seems obvious that the needs and purchasing habits of customers could be readily ascertained through simple observation or contact with each customer. Although the supplier evaluations present somewhat different considerations, this information is only a portion of data utilized by a company in selecting a supplier. For example, one supplier may be considered more reliable, but it may have significantly higher prices than another supplier. Moreover, Mercer had worked as a salesman for a competitor before joining Roberts, and anyone with experience in the field must certainly have had experience with various suppliers. Therefore, although the supplier evaluations may not be readily available from other sources, we conclude that they are not in themselves trade secrets.

Our conclusion on this issue is buttressed by the fact that Roberts hired Mercer to develop its Dallas office in part because of Mercer's knowledge of the trade area gained as an employee for a competitor and his ability to retain a substantial number of those customers when he joined Roberts. As the district court found, "[i]mplicit in the ability to retain these customers was Roberts' knowledge of the identities and needs of those customers which [Mercer] retained and furnished to Roberts". This finding is not clearly erroneous. Moreover, while Mercer may not have had certain information regarding Roberts' customers had he not work for the company, Roberts would not have had similar information about its competitors had it not hired Mercer. To put it simply, "what is sauce for the goose is sauce for the gander."

## III. MISAPPROPRIATION OF CORPORATE NAME

The district court found that Mercer did not use the name of his Texas corporation, C. A. Roberts Co., Inc., to solicit business, that he did not mislead potential customers by using that name, and that he transacted no business whatsoever under that name. These findings are not clearly erroneous.

Roberts, however, contends that Mercer's reservation of the name "C. A. Roberts Co., Inc." with the Texas Secretary of State prevented the company from qualifying to do business in Texas and from building a warehouse in the state. However, the record is devoid of any attempt of the company to so qualify to do business in Texas. *See* Tex.Bus.Corp.Act art. 8.01. At the time of trial Roberts had not paid franchise taxes to the State of Texas, although it had been doing business in the state for several years, and had not attempted to register its corporate name with the Secretary of State. *See* Tex.Rev.Civ.Stat.Ann., Taxation-General, art. 12.01 (franchise taxes); Tex.Bus.Corp. Act art. 2.07 (reservation of corporate name). The district court properly concluded that Roberts suffered no injury from Mercer's formation of the Texas corporation, which was dissolved prior to trial.

## IV. CONCLUSION

Because of our treatment of this case, we need not reach other issues addressed by

8. Apparently *contra* is *Crouch v. Swing Machinery Co.*, 468 S.W.2d 604 (Tex.Civ.App.— San Antonio 1971, no writ), which is not cited or distinguished in the later *Brooks* decision. However, we consider *Brooks* the more author- itative of the two, since the Supreme Court of Texas refused to hear the case, noting that there was no reversible error. *Crouch*, on the other hand, has no writ history, indicating that it was not appealed to the Supreme Court.

the parties. The judgment of the district court is affirmed in all respects, and each party shall bear his own costs on appeal.

AFFIRMED.

AINSWORTH, Circuit Judge, dissenting:

I respectfully dissent from the failure of the court to reverse that portion of the district court judgment which denied relief to plaintiff Mercer. I agree, however, that the judgment should be affirmed insofar as it denies defendant's counterclaims.

In my view the Texas statute of frauds, Tex.Bus. & Comm.Code § 26.01, does not apply to the oral employment contract between plaintiff Mercer and defendant C. A. Roberts Company involved in this case, for the following reasons.

First, I would hold that the employment agreement was an annual agreement beginning on January 1 of each year, and thus was to be performed within one year from the date of its making. *See* Tex.Bus. & Comm.Code § 26.01(b)(6) (Texas statute of frauds applies only to "an agreement which is not to be performed within one year from the date of making the agreement . . ."). The parties may have contemplated that it would take Mercer three to five years to develop the Dallas office of C. A. Roberts Company to maturity, but they specified no definite time for performance. On the contrary, the parties treated the agreement as if executed on an annual basis. *See Miller v. Riata Cadillac Co.*, 517 S.W.2d 773 (Tex. 1974); *Bratcher v. Dozier*, 162 Tex. 319, 346 S.W.2d 795 (1961); *Hall v. Hall*, 158 Tex. 95, 308 S.W.2d 12 (1957).

Second, and most importantly, Mercer has fully performed the agreement upon which he now sues. He does not seek recovery for prospective employment compensation, but only for the months during which he was actually employed and fulfilled his employment obligations. The majority points out that the Texas courts have on occasion held that partial or full performance by an employee of an oral employment contract is insufficient to render the statute of frauds inoperative. At least two of those courts, however, have stated

there are circumstances in which an employee's performance of the oral agreement does call for equitable relief—when nonenforcement of the agreement would amount to fraud. *Chevalier v. Lane's, Inc.*, 147 Tex. 106, 213 S.W.2d 530, 534 (1948); *Paschall v. Anderson*, 127 Tex. 251, 91 S.W.2d 1050, 1051 (Tex.Comm.App.1936, opinion adopted).

Thus the Texas statute is subject to the exception that its provisions will not be maintained where to do so would amount to a denial of equity to a plaintiff in circumstances which show that employment for the year involved was induced by defendant's fraud. It must be emphasized that it was not until August 1974—of the year sued upon—that defendant C. A. Roberts unilaterally notified plaintiff Mercer that his compensation, bonus and salary, would be substantially reduced retroactive to January 1, 1974. Mercer had first been employed by defendant in 1968. It is undisputed that in August 1970 the parties agreed that Mercer's compensation would be $870 per month plus 15% of defendant's Dallas office contribution to profits for the year, retroactive to January 1, 1970. Thereafter, for four consecutive years, 1970–1973, Mercer was paid in accordance with this agreement. But defendant seeks nevertheless to abort its agreement and deprive Mercer of money fully earned, by resorting to the Texas statute of frauds. Defendant C. A. Roberts is thus attempting by fraudulent means to obtain an advantage over plaintiff which equity clearly forbids. Mercer was induced to work for defendant in the year 1974, believing his compensation would be the same as in the four previous years, but defendant changed the basis of compensation in August 1974 without mutual agreement and retroactive to January 1974. Certainly defendant should be estopped from attempting to avoid payment of just compensation in this inequitable way.

The majority concedes that C. A. Roberts Company changed Mercer's compensation formula simply because his compensation had become disproportionate to that of oth-

er employees. The court's opinion observes that "The result may seem harsh since Mercer worked from January to August 1974 under the assumption that he would receive his incentive pay." Yet Mercer's earnings had risen only as a result of his doing what the company hired him to do—develop the Dallas office into a profitable enterprise. As C. A. Roberts Company made money, Mercer was to make money; that was the agreement. We should not and need not reach a "harsh" result in this case since neither the Texas statute nor the Texas decisions require it. The laborer is worthy of his hire. An appropriate order should be entered requiring that he be paid.