**Ronald and Rose AVERA, Appellants,**

**v.**

**CLARK MOULDING, Appellee.**

**No. 05–89–00396–CV.**

Court of Appeals of Texas,
Dallas.

March 23, 1990.

Charles F. Guittard, Dallas, for appellants.

Barbara M.G. Lynn, Ray D. Weston, Jr., Dallas, for appellee.

Before McCLUNG, BAKER and BURNETT, JJ.

OPINION

McCLUNG, Justice.

This is an appeal from a summary judgment. Ronald and Rose Avera (the Averas) of Houston and Clark Moulding Company, Incorporated (Clark) of Dallas are in the business of manufacturing and selling picture frame moulding. The Averas had a process to produce a marble faux appearance as a finish on picture frame moulding. Being desirous of expanding production of such a product, the Averas began a series of discussions with Clark about a business arrangement between them. In essence, Clark's larger capacity for manufacturing, marketing, and capital coupled with the Avera's process was believed to provide both with a potentially profitable business opportunity. The discussions centered around a plan that would pay the Averas a royalty on the products produced and sold by Clark. Discussions concluded when no agreement was reached. A short time later, Clark bought some machinery, at substantial expense, of the type contemplated in the discussions between the Averas and Clark as being necessary to mass produce the finished picture frame moulding. Clark also brought in an independent third party to utilize the machinery and develop a process to produce picture frame moulding with a marble faux finish. The Averas learned of this activity during the development process and before Clark produced any saleable items. Upon learning of

Clark's activity, the Averas notified Clark by letter that they would demand a royalty on any product Clark produced with a marble faux finish.

Clark immediately filed a declaratory judgment suit asking for a judgment declaring that he had no liability to the Averas and that no royalties would be due them. The Averas filed a counter-claim asking for actual and exemplary damages on numerous grounds, including misappropriation of a trade secret and breach of fiduciary duty by Clark. The trial court granted Clark's motion for summary judgment. The Averas maintain the summary judgment was improperly granted because there exists genuine issues of material fact that have not been resolved. We agree, and reverse the trial court's judgment and remand the case to the trial court for further proceeding.

The standard for reviewing a motion for summary judgment is: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985). It is not the purpose of the summary judgment rule to provide either a trial by deposition or a trial by affidavit, but rather to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact. *Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557, 563 (1962).

If it is necessary for the trial court to resolve factual issues, then the summary judgment rendered is neither authorized by the summary judgment procedure nor proper. *See Smith v. Bolin,* 153 Tex. 486, 489, 271 S.W.2d 93, 94 (1954); TEX.R.CIV.P. 166a(c). The summary judgment procedure is designed to eliminate patently un-

meritorious claims and untenable defenses when there is no genuine issue of material fact; therefore, it is unavailable for the adjudication of the merits of any material issue of fact. *See In re Estate of Price v. State Nat'l Bank,* 375 S.W.2d 900, 904 (Tex.1964). The movant must establish his entitlement to a summary judgment of the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The question here on appeal is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the Averas' cause of action. *See Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

A trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. *Rimes v. Club Corp. of America,* 542 S.W.2d 909, 913 (Tex.Civ. App.—Dallas 1976, writ ref'd n.r.e.). Misappropriation of trade secrets is shown by proof: (1) that a trade secret existed; (2) that the trade secret was acquired through a confidential relationship; and (3) that the defendant used the trade secret without authorization from the plaintiff. *Plains Cotton Coop. Assoc. of Lubbock, Texas v. Goodpasture Computer Service, Inc.,* 807 F.2d 1256, 1262 (5th Cir.1987) *reh denied.*

The Averas claim they had developed a technique of using a series of modified paint sprayers with unique ingredients in such a way that could produce a large volume of picture frames with a marble faux finish. At the time of the discussions between the Averas and Clark, a marble faux finish was not unheard of in the picture frame industry, but it is undisputed that at that point in time, no one had come up with a way to produce this type product on a large scale. Also, it is undisputed that the ability to produce this type product on a large scale would give such a producer an opportunity to dominate the market and

# 146

obtain an economic advantage over competitors that did not have this ability.

Our record does not reflect whether Clark produced any product using the process in question. The record does reflect that before the discussions with the Averas, Clark had never attempted to manufacture or produce this type product. There is also evidence that Clark installed machinery and began experimenting and development of a production process utilizing a technique similar to the Avera process.

The Averas claim that in the development process, Clark was, in fact, using information the Averas revealed to him in confidence during their prior discussions. Further, that they made Clark aware this information was confidential and only being revealed during negotiations toward a business arrangement that would pay the Averas a royalty; and that Clark was never given permission to use this information, except in the contemplated business arrangement between them.

Clark maintains no trade secret exists as a matter of law. He supports this with an affidavit from an expert, the individual working with Clark in the development process on the new machinery. This expert claims to have knowledge of this process learned from other sources. Both Clark and his expert acknowledge, however, that they had never successfully produced such a product.

A trade secret, as defined by the *Rimes* court is not necessarily documented or licensed in the nature of a patent or copyright. It is, of course, proprietary information of value to the owner and subject to protection.

We conclude there exists a genuine issue of fact as to the question of whether the Averas had a trade secret as that is defined, and if so, whether it was revealed in such a confidential manner that it constitutes a breach of fiduciary duty to use it without permission. We reverse the trial court's judgment and remand the case to the trial court for further proceeding.