Linda **GRIZZLE,** as next friend of Brentley G. Grizzle, a minor; Nesbit Wehde; Guy W. Rucker, Independent Executor of the Estate of Marian Francis Anné Rucker; Robert Rucker and Marilyn Rucker, in their Capacity as Remaindermen of the Anné Rucker Trust; on Behalf of Themselves and All Others Similarly Situated, Appellants,

v.

**TEXAS COMMERCE BANK, N.A.;** The New Galveston Company; The Frost National Bank; and Texas Commerce Equity Holdings, Inc., Appellees.

No. 05–98–00537–CV.

Court of Appeals of Texas, Dallas.

Feb. 14, 2001.

Julia F. Pendery, R. Michael Northrup, Cowles & Thompson, P.C., Dallas, Christopher H. Rentzel, Bracewell & Patterson, L.L.P., Dallas, for Appellant.

Charles A. Gall, Jenkins & Gilchrist, P.C., Dallas, George M. Kryder, III, Vinson & Elkins, Dallas, for Appellee.

Before Chief Justice THOMAS and Justices WRIGHT and ROSENBERG.[1]

## OPINION

Opinion By Justice ROSENBERG.

Linda Grizzle, as next friend of her minor daughter Brentley G. Grizzle, (Grizzle)

[1]. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

brought this action on her own behalf and on behalf of a class for damages caused to trust accounts by the merger/swap of Frost National Bank (Frost) in Dallas, Texas, with Texas Commerce Bank, N.A. (TCB) in Corpus Christi, Texas. The proposed class of plaintiffs includes the beneficiaries of the trusts managed by the two banks as of April 1994. Prior to the class certification hearing, the trial court granted summary judgment that Grizzle take nothing from the banks, TCB and its parent company, Texas Commerce Equity Holdings, Inc., (TCE) (collectively, the TCB defendants), and Frost and its parent company, the New Galveston Company (New Galveston) (collectively, the Frost defendants). Before final judgment was rendered, additional class representatives, Nesbit Wehde (Wehde), and Guy W. Rucker, independent executor of the estate of Marian Francis Anné Rucker, Robert Rucker and Marilyn Rucker, remaindermen of the Anné Rucker Trust (collectively, the Ruckers), were added to the suit. The trial court struck the pleadings of the additional plaintiffs, making its take-nothing judgment final. In eight issues, appellants appeal the summary judgment and order striking the intervention of additional class representatives, and they challenge the propriety of entering a summary judgment against an individual plaintiff prior to a hearing on class certification. We reverse the order striking the interventions, affirm the trial court's procedure of hearing the motion for summary judgment before certification, reverse the summary judgment in favor of the TCB defendants, affirm in part and reverse in part the summary judgment in favor of the Frost defendants, and remand this case to the trial court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 1994, TCB, a wholly owned subsidiary of TCE, traded its bank in Corpus Christi, Texas, for a bank in Dallas, Texas, owned by Frost, a wholly owned subsidiary of New Galveston. After the transfer, each successor bank liquidated the trust account investments in the predecessor bank's common trust and stock funds and reinvested the trust monies in the successor bank's common trust and stock funds.

In April 1996, Grizzle brought a class action, alleging the class incurred substantial losses to their trust accounts' value, unfavorable tax consequences, fees, and expenses as a result of the liquidation of the trust funds. The suit alleged claims for breach of fiduciary duty, breach of contract, tortious interference with contract, various conspiracy claims, deceptive trade practices, negligence, gross negligence and fraud and requested removal of trustee, forfeiture of trustee fees, exemplary damages, and attorney's fees. Grizzle did not make a demand for payment before bringing suit as normally required by the Deceptive Trade Practices Act (DTPA), but her petition alleged no prior demand was practical because the statute of limitations was about to expire. *See* TEX.BUS. & COM.CODE ANN. § 17.505(b) (Vernon Supp.2001).

The parties proceeded with limited discovery.[2] On December 16, 1996, Frost tendered $7,712.18 to Grizzle as payment of her DTPA damages and attorney's fees. Grizzle refused to accept the purported DTPA tender. On December 27, 1996, the Frost defendants moved for summary judgment and requested dismissal of Grizzle's individual claims and the claim for class action. The TCB defendants filed a similar motion in January 1997. Grizzle filed a response that included her affidavit and the affidavit of James Bevans, her expert witness on bank trust account operations. The banks filed a motion to strike Grizzle's summary judgment affidavits. At the February 10, 1997 hearing on the motions for summary judgment, the court

---

2. Appellants did not request a continuance of the summary judgment proceeding to allow further discovery and do not complain on appeal concerning the limited discovery.

granted the motion to strike but also granted Grizzle leave to file amended affidavits. Grizzle filed amended affidavits and an amended petition. Her second amended original petition, filed February 20, 1997, added Marian Francis Anné Rucker as an additional putative class representative. Grizzle filed a third amended original petition on March 21, 1997, dropping Mrs. Rucker and adding Wehde as a putative class representative.

On March 25, 1997, the court granted the banks' motions for summary judgment. In May 1997, the court struck plaintiff's third amended petition. Grizzle and Wehde appealed. This Court dismissed the appeal after determining we did not have jurisdiction because, after the court struck plaintiff's third amended petition, the second amended petition was revived and the final judgment failed to address the class action claims represented by Mrs. Rucker.[3] On remand, Grizzle filed her fourth amended petition, substituting the Ruckers in the suit as putative class representatives, because Mrs. Rucker had died. The trial court entered a final judgment, striking the second and fourth amended petitions, striking the Ruckers' and Wehde's interventions, and ordering that Grizzle take nothing by her suit. This appeal followed.

## INTERVENTION IN CLASS ACTION

In their second issue, appellants complain that the court improperly struck the interventions of Wehde and the Ruckers as putative class representatives. Appellants argue it was an abuse of discretion to strike the addition of putative class members as class representatives when granting a motion for summary judgment on the sole class representative's individual claims. Appellants contend that disallowing the intervention would provide a procedure to allow the "pick off" of a class representative without any recourse for the putative class.

Under the rules of civil procedure, a person or entity has the right to intervene if the intervenor could have brought the same action, or any part thereof, on his own. *See* Tex.R.Civ.P. 60. An intervenor in state court is not required to secure the court's permission to intervene, and the party opposing intervention has the burden to challenge it by a motion to strike. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990) (op. on reh'g). Although the trial court has broad discretion in determining whether an intervention should be struck, it is an abuse of discretion to strike a plea in intervention if (1) the intervenor could have brought the action on his own, (2) the intervention will not complicate the case by an excessive multiplication of the issues, and (3) the intervention is almost essential to effectively protect the intervenor's interest. *Id.*

The banks argue these parties were not timely added to the lawsuit. However, a petition in intervention is not subject to the requirements of Texas Rule of Civil Procedure 63 concerning amendments and responses to pleadings, nor is it subject to the requirements of Texas Rule of Civil Procedure 166a concerning responses to motions for summary judgment. *See In re Estate of York*, 951 S.W.2d 122, 125 (Tex.App.—Corpus Christi 1997, no pet.); *Tex. Supply Ctr., Inc. v. Daon Corp.*, 641 S.W.2d 335, 337 (Tex.App.—Dallas 1982, writ ref'd n.r.e.). An intervention is proper at any time before a final decision on the merits. *See Citizens State Bank v. Caney Invs.*, 746 S.W.2d 477, 478 (Tex.1988) (per curiam); *In re Estate of York*, 951 S.W.2d at 125; *see also Litoff v. Jackson*, 742 S.W.2d 788, 789 (Tex.App.—San Antonio, 1987, no writ) (per curiam) (intervention allowed after trial was completed). Mrs. Rucker intervened before the trial court rendered its summary judgment on Grizzle's individual claims, and at

---

3. *See Grizzle v. Tex. Commerce Bank*, No. 05–97–01076–CV, 1997 WL 593809 (Tex.App.—Dallas Sept. 25, 1997, no. pet.) (not designated for publication).

the time Wehde intervened, there had been no final judgment rendered with respect to Mrs. Rucker's claim or the class action. Therefore, we conclude that the interventions were timely.

■ The Frost defendants also argue the Ruckers cannot intervene because their action is derivative of Mrs. Rucker's claim. They argue that by omitting Mrs. Rucker from the third amended petition, appellants dismissed Mrs. Rucker from the lawsuit and that the dismissal was pursuant to a rule 11 agreement. In this Court's previous opinion, we clearly held that when the trial court struck the third amended petition that included Wehde's intervention, the second amended petition that included Mrs. Rucker's intervention was restored as the live pleading. *Grizzle v. Tex. Commerce Bank*, No. 05–97–01076–CV, 1997 WL 593809 (Tex.App.—Dallas Sept. 25, 1997, no. pet.) (not designated for publication);[4] *see Randle v. NCNB Tex. Nat'l Bank*, 812 S.W.2d 381, 384 (Tex. App.—Dallas 1991, no writ). Because our holding was not appealed to the supreme court of Texas, it constitutes the law of the case and governs subsequent proceedings. *See Cockrell v. Republic Mortgage Ins. Co.*, 817 S.W.2d 106, 115 (Tex.App.—Dallas 1991, no writ). Because the second amended petition was restored as the live pleading, Mrs. Rucker was restored as an intervenor, and the Ruckers, who filed a suggestion of death, were able to proceed with Mrs. Rucker's claim.

■ Finally, the banks argue the court correctly struck Wehde's intervention because Wehde's claim had no merit. The banks' motions to strike the intervention attack the factual basis and merits of Wehde's claim, and the Frost defendants presented the court with Wehde's deposition testimony and a copy of the Wehde trust instrument. The court conducted a hearing on the motions to strike the intervention on April 11, 1997, the same day these motions were filed.

■ The sufficiency of a petition in intervention is tested by its allegations of fact on which the right to intervene depends.[5] *Serna v. Webster*, 908 S.W.2d 487, 492 (Tex.App.—San Antonio 1995, no writ); *H. Tebbs, Inc. v. Silver Eagle Distribs., Inc.*, 797 S.W.2d 80, 84 (Tex.App.—Austin 1990, no writ). The intervenor bears the burden to show a justiciable interest in the lawsuit. *Mendez v. Brewer*, 626 S.W.2d 498, 499 (Tex.1982). After a motion to strike a petition for intervention is filed, the intervenor should be given an opportunity to explain, and show proof of, his interest in the lawsuit. *Nat'l Union Fire Ins. Co. v. Pennzoil Co.*, 866 S.W.2d 248, 250 (Tex.App.—Corpus Christi 1993, no writ); *see Inter-Continental Corp. v. Moody*, 411 S.W.2d 578, 589 (Tex.Civ. App.—Houston 1966, writ ref'd n.r.e.) (op. on reh'g) (where intervenor pleads viable cause of action, intervenor's claim should be resolved by hearing on the merits or summary judgment proceeding). We conclude that the court abused its discretion by striking Wehde's claim without affording her an opportunity to respond to the banks' motions.

■ Having reviewed the record, we conclude the amended petitions allege facts which, if true, would provide Wehde and the Ruckers with standing to bring the action on their own accord and would show that their intervention will not complicate the case by an excessive multiplication of the issues. Furthermore, if the dismissal

---

4. Although generally an unpublished opinion may not be cited as authority, we take judicial notice of our own unpublished opinion from the prior appeal in this case because it contains the law of the case. *See Sledge v. Mullin*, 927 S.W.2d 89, 93 (Tex.App.—Fort Worth 1996, no writ); *Lake v. Lake*, 899 S.W.2d 737, 739 n. 3 (Tex.App.—Dallas 1995, no writ).

5. At the class certification hearing, however, it is necessary for the court to go beyond the pleadings, to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues. *Southwestern Refining Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000).

of Grizzle's individual claims was proper, the Wehde and/or Ruckers' interventions would be essential to effectively protect their claims and those of the remaining class members.[6] Therefore, we conclude that the court abused its discretion by striking the intervenors' pleadings. We resolve appellants' second issue in their favor.

## SUMMARY JUDGMENT BEFORE CLASS CERTIFICATION

■ In their first and sixth issues, appellants contend the court abused its discretion by allowing a "pick off" of the named class representative by granting the banks' motions for summary judgment and dismissing Grizzle's individual claims, based on a DTPA tender, before conducting a class certification hearing. The banks argue that the court may properly address the merits of a class representative's claim before deciding whether to certify a class and that, if Grizzle had no live individual claims, she had no right to bring suit on behalf of the putative class. *See Stanley v. Wal Mart Stores, Inc.*, 839 F.Supp. 430, 435 (N.D.Tex.1993).

■ Before certification, suits brought as class actions are typically governed by rules of procedure applicable to lawsuits generally rather than rules of procedure specific to class actions.[7] *See Parker County v. Spindletop Oil & Gas Co.*, 628 S.W.2d 765, 768–69 (Tex.1982). Until

the trial court duly certifies a class, a suit brought as a class action is treated as if it was brought by the named plaintiff suing on her own behalf. *Palais Royal, Inc. v. Partida*, 916 S.W.2d 650, 653 (Tex.App.— Corpus Christi 1996, orig. proceeding [leave denied] ). The trial court is not required to conduct the class certification hearing before considering a defendant's motion for summary judgment or before making a ruling on the merits of the plaintiff's claim. *See Wright v. Schock*, 742 F.2d 541, 543 (9th Cir.1984); *see also* MANUAL FOR COMPLEX LITIGATION § 30.11 (3d ed.1995).[8]

■ A class representative must be a member of the class and possess the same interest and suffer the same injury as the class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1539 (8th Cir. 1996). If a plaintiff does not have a claim against a defendant, then that plaintiff cannot be a representative in a class action against that defendant. *Cedar Crest Funeral Home, Inc. v. Lashley*, 889 S.W.2d 325, 331 (Tex.App.—Dallas 1993, no writ). In the event of a summary judgment against the plaintiff, the judgment will not be res judicata as to other individual plaintiffs, and other individuals or class members remain free to assert any claims they may have against the defendants. *See Wright*, 742 F.2d at 544. Nonetheless, if

6. While the trial court generally plays a relatively detached role in most civil proceedings, in a class action, the court is the guardian of the class interest. *Gen. Motors Corp. v. Bloyed*, 916 S.W.2d 949, 954 (Tex.1996).

7. Class actions are governed by Texas Rule of Civil Procedure 42. Since rule 42 is generally patterned after Federal Rule of Civil Procedure 23, federal decisions interpreting class action procedures provide authoritative guidance for Texas courts. *Bloyed*, 916 S.W.2d at 954 n. 1; *Am. Express Travel Related Servs. Co. v. Walton*, 883 S.W.2d 703, 708 (Tex. App.—Dallas 1994, no writ).

8. However, it is not necessary for plaintiffs to prove a prima facie case of liability to be entitled to class certification. *See Grae-*

*bel/Houston Movers, Inc. v. Chastain*, 26 S.W.3d 24, 30 (Tex.App.—Houston [1st Dist.] 2000, pet. dism'd w.o.j.). Certification of a class action does not hinge on the resolution of disputed facts and does not depend on the merits of the litigation. *Employers Cas. Co. v. Tex. Ass'n of Sch. Bds. Workers' Comp. Self Ins. Fund*, 886 S.W.2d 470, 473 (Tex.App.— Austin 1994, writ dism'd w.o.j.); *Clements v. League of United Latin Am. Citizens (LULAC)*, 800 S.W.2d 948, 951 (Tex.App.—Corpus Christi 1990, no writ); *see Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 403 (Tex.2000) (class should not be defined by criteria that require analysis of merits of case).

the summary judgment against the sole class representative is proper on all the class representative's claims, then the entire case including the class claims may be dismissed.[9] *See Floyd v. Bowen*, 833 F.2d 529, 534 (5th Cir.1987); *Stanley*, 839 F.Supp. at 435. Accordingly, to the extent appellants' first issue complains of the trial court's consideration of the banks' motions for summary judgment on Grizzle's individual claims prior to conducting a class certification hearing, we resolve appellants' first issue against them.

■ Nevertheless, appellants contend that, because one of the bases of the summary judgment is that Frost tendered payment of Grizzle's damages and attorney's fees under section 17.506(d) of the Texas Business and Commerce Code, appellees are attempting to "buy off" a representative plaintiff to defeat a cause of action. *See* TEX.BUS. & COM.CODE ANN. § 17.506(d) (Vernon Supp.2001).

■ When all personal claims of an individual plaintiff are settled, the substantive claim becomes moot and the trial court loses jurisdiction of the plaintiff's controversy. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). Further, the court can enter judgment against a putative class representative on a defendant's offer of payment where class certification has been properly denied and the offer satisfies the representative's entire demand for injuries and costs of suit. *Alpern*, 84 F.3d at 1539. However, prior to certification, an offer directed only to the damages of

the representative plaintiff is not an offer for the entire relief sought by the suit. *Greisz v. Household Bank (Ill.), N.A.*, 176 F.3d 1012, 1015 (7th Cir.1999) (citing *Alpern*, 84 F.3d at 1539 and *Roper*, 445 U.S. at 341, 100 S.Ct. 1166 (Rehnquist, C.J., concurring)). Complete relief includes payment of class claims and costs. *See Roper*, 445 U.S. at 341, 100 S.Ct. 1166 (Rehnquist, C.J., concurring); *see also United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 401–02, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (confession of judgment by defendants on less than all issues will not moot entire case); *Alpern*, 84 F.3d at 1539 (judgment should be entered against putative class representative on defendant's offer of payment only where class certification has been properly denied and offer satisfies representative's entire demand for injuries and costs of suit).

In this suit, before any certification hearing, the attorney for the Frost defendants made a tender of $7,712.18, which included $5,508.70 in economic damages and $2,203.48 in attorney's fees, as an offer of settlement to dispose of all Grizzle's damages. Grizzle did not accept this tender. The tender did not include class claims and did not provide for her litigation costs. Accordingly, this rejection of an offer of less than complete relief could not eliminate the controversy between Grizzle and the banks prior to certification. *See Greisz*, 176 F.3d at 1015.

Additionally, a DTPA tender cannot be a statutory bar to other causes of action. First, section 17.506(d) provides a defense

---

9. Before making a precertification ruling on the merits, the court should consider whether the interests of putative class members may be prejudiced and provide such notice as is appropriate for their protection under the circumstances of the particular case. *See* MANUAL FOR COMPLEX LITIGATION § 30.11 (3d ed.1995). Rule 42(e) authorizes the court to dismiss a class action and directs the court to provide class members with such notice of the dismissal as the court deems appropriate. *See* TEX.R.CIV.P. 42(e). In federal class action proceedings, courts have interpreted the corresponding federal rule 23(e) to apply to a

class action during the interim between filing and certification. *See, e.g., Diaz v. Trust Territory of the Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir.1989); FED.R.CIV.P. 23(e). Even before the class action is certified, federal rule 23(e) protects the interests of those absent class members who gained knowledge of the filing of the lawsuit and may be prejudiced by the running of the statute of limitations if they are not timely notified of the dismissal of that action. *See Ventura v. Banales*, 905 S.W.2d 423, 426 (Tex.App.—Corpus Christi 1995, orig. proceeding [leave denied] ).

to "an action brought under Section 17.50 of this subchapter." TEX .BUS. & COM.CODE ANN. § 17.506(d). This section is a statutory defense only to claims brought as violations of the DTPA and does not establish a defense to any other cause of action. Further, there is no rationale to extend the defensive bar of a DTPA tender to non-DTPA causes of action.

 However, the banks claim that even if the offer did not eliminate all Grizzle's claims, it did preclude her claims under the DTPA and her capacity to be a class representative in that cause. Under the DTPA, for a tender offer to bar a DTPA cause of action, the offer must be made pursuant to statutory requirements. *See id.* Under the DTPA, when a consumer gives notice of a claim sixty days before the filing of the suit, a defendant is protected from suit if he promptly tenders payment of the consumer's claimed damages. *Id.* §§ 17.505(a)-(b), 17.506(d). Additionally, the Texas Supreme Court has stated that a representative plaintiff may present notice of the class claim under the DTPA because individual plaintiffs have the ability to negotiate settlements on behalf of putative classes. *In re Alford Chevrolet-Geo,* 997 S.W.2d 173, 178 (Tex. 1999) (orig.proceeding); *see, e.g., Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 597–98, 617–18, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Bloyed,* 916 S.W.2d at 951–52. While the party seeking to institute a class action must be able to seek individual relief for the cause of action, *Stanley,* 839 F.Supp. at 433, the supreme court recognizes that the DTPA permits a consumer to provide preliminary notice on behalf of the putative class. *In re Alford Chevrolet-Geo,* 997 S.W.2d at 178. To permit a tender only to named representatives over their objection when there is notice of a class claim would be an impermissible "buy off" by a defendant for the DTPA claims. *See Roper,* 445 U.S. at 339, 100 S.Ct. 1166; *Greisz,* 176 F.3d at 1015; *Alpern,* 84 F.3d at 1539; *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1050 (5th Cir.1981). Here, however, Grizzle sent no DTPA notice on behalf of the class. She did not present notice of the class claims as provided by the statute and allowed by the supreme court. Thus, the banks could take advantage of any statutory DTPA bar to her individual claims provided by the tender.

Accordingly, we conclude that although the court was authorized to consider the banks' motions for summary judgment on Grizzle's individual claims before conducting a class certification hearing, the court was not authorized to dismiss all of Grizzle's claims, including the claims on behalf of the class, based upon an unaccepted tender of Grizzle's individual damages. Nevertheless, the trial court, under the circumstances of this case, may consider the DTPA defenses presented in the motions for summary judgment for Grizzle's individual DTPA claim. Therefore, we resolve in appellants' favor their first and sixth issues to the extent they complain that the trial court determined Grizzle's claim for class action was mooted by the banks' unaccepted tender to settle Grizzle's individual claims.

## SUMMARY JUDGMENT ON GRIZZLE'S INDIVIDUAL CLAIMS

We next consider whether the trial court properly granted summary judgment for the banks on the grounds stated in the motions for summary judgment, including the DTPA defense. In issues three through eight, appellants complain that the trial court erred in granting summary judgment against Grizzle on all her claims.

### Standard of Review

 To prevail on summary judgment under rule 166a(c), a movant must establish that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.

TEX.R.CIV.P. 166a(c);[10] *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995) (per curiam). A defendant seeking summary judgment must negate as a matter of law at least one element of each of the plaintiff's theories of recovery or plead and prove as a matter of law each element of an affirmative defense. *Friendswood Dev. Co. v. McDade + Co.,* 926 S.W.2d 280, 282 (Tex.1996). Only after a defendant produces evidence entitling it to summary judgment as a matter of law does the burden shift to the plaintiff to present evidence creating a fact issue. *Rhone-Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222–23 (Tex.1999).

■■■■ When the trial court's judgment does not state the grounds upon which summary judgment was granted, the appellant must show that each of the independent grounds asserted in the motion is insufficient to support summary judgment. *See Holloway v. Starnes,* 840 S.W.2d 14, 18 (Tex.App.—Dallas 1992, writ denied). In reviewing a motion for summary judgment, we accept all evidence favorable to the nonmovant as true, indulge the nonmovant with every favorable reasonable inference, and resolve any doubt in the nonmovant's favor. *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

### DTPA Tender

■■■ In the fifth issue, appellants contend Frost's tender of payment did not comply with the statutory requirement that would bar Grizzle's individual DTPA claims. The banks moved for summary judgment on the ground that Frost's tender of $7,712.18 was an affirmative defense to Grizzle's DTPA claims, pursuant to section 17 .506(d) of the Texas Business and Commerce Code, entitling them to summary judgment as a matter of law on those claims. *See* TEX.BUS. & COM.CODE ANN. § 17.506(d). We consider whether Frost's tender met the statutory requirements.

As a prerequisite to filing a suit under the DTPA, a consumer is required to give written notice of damages to the defendant at least sixty days before filing the suit. *See id.* § 17.505(a).[11] In this case, Grizzle never sent the banks a notice of damages. The notice requirement is waived if filing suit is necessary to prevent the expiration of the statute of limitations. *See id.* § 17.505(b). In such event, the defendant may still tender payment of damages, but to be entitled to rely on the tender as an affirmative defense under section 17.506(d), the tender must be made within sixty days after service of the suit. *See id.* While the banks were served before June 3, 1996, the summary judgment evidence shows that Frost did not tender payment until December 16, 1996. Thus, Frost did not tender payment of Grizzle's damages within sixty days after service of the lawsuit, as required by the statute.

■■■ The banks contend they received notice of Grizzle's damages in her answers to interrogatories and in deposition testimony, which bear the date December 5, 1996, and tendered the amount of those damages eleven days later, within the statutory tender period. In her interrogatories, Grizzle claimed she was seeking damages "in at least the amount of $5,508.70, reflecting the loss in the value of the Grizzle Trust's holdings in the collective funds

---

10. The motions for summary judgment were filed before the addition of Texas Rule of Civil Procedure 166a(i), which allows a defendant to merely claim there is "no evidence" of a material element of a plaintiff's case.

11. Section 17.505(a) provides in part:
 As a prerequisite to filing a suit seeking damages [for violations of the DTPA] ..., a consumer shall give written notice to the person at least 60 days before filing the suit advising the person in reasonable detail of the consumer's specific complaint and the amount of economic damages, damages for mental anguish, and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant.
 TEX.BUS. & COM.CODE ANN. § 17.505(a) (Vernon Supp.2001).

of [Frost], due to the merger transaction in question ..." and attorney's fees. She restated that amount in her deposition. However, we conclude that "discovery" of any damages *after* suit has been filed is not a consumer's notice or demand for damages *before* suit is filed, pursuant to section 17.505(a). *See id.* § 17.505(a). Further, the tender, more than sixty days after service of the suit, does not meet the requirements of section 17.505(b). *See id.* § 17.505(b). Because Frost's tender did not meet the requirements of section 17.505, the banks may not rely on the tender as an affirmative defense to Grizzle's DTPA claim under section 17.506(d).[12] Thus, the banks are not entitled to summary judgment as a matter of law on Grizzle's DTPA claims because of Frost's tender. We resolve appellants' fifth issue in their favor.

### No Damages

In the fourth issue, appellants contend the trial court could not have granted summary judgment on the basis that Grizzle suffered no damages. In their motion for summary judgment, the Frost defendants argued they did not cause Grizzle any damages because any loss to Grizzle's trust was a product of market forces and had no connection to the merger. The Frost defendants contended the undisputed facts showed Grizzle suffered no damages because, after the merger and liquidation, the Grizzle trust had the same value in cash rather than units in a collective fixed income fund and a collective common stock fund. As evidence, the Frost defendants relied on the trust transactions statements and on Grizzle's deposition testimony that, before the sale of the collective investment fund units, Grizzle owned units of securities with a value of $75,362, and, after the liquidation, the trust had that amount in cash; further, before the sale of the common stock fund, Grizzle's investment was valued at $119,840, and after the liquidation, the trust had that amount in cash. The Frost defendants asserted that Grizzle's damages of $5,508.70 was the difference in value between the funds as of the date of liquidation and the federal tax basis.

In its motion for summary judgment, TCB contended it was entitled to summary judgment on claims for breach of fiduciary duty, negligence, gross negligence, breach of contract, tortious interference with contract, removal of TCB as a trustee, and violations of the DTPA because Grizzle was not damaged. Specifically, TCB asserted that the only damage Grizzle suffered was "a small taxable loss of $5,508.70." TCB further argued that characterizing such a loss as "damages" was "misleading" because, first, the common funds were worth $195,000 when TCB became trustee and TCB obtained that amount; second, the "losses" occurred as a result of the performance of the funds before the merger and liquidation and TCB obtained the same amount Frost would have obtained had there been no merger; and, third, the liquidation did not cause the loss, rather it "merely turned the Grizzle Trust's pre-existing paper losses into actual cash losses ... creat[ing] a tax loss for the 1994 tax year" that could be used to offset income in 1994 and subsequent years.

12. We also note that Frost's tender of damages states it was made as a settlement offer pursuant to section 17.5052 of the DTPA, which allows an offer of settlement for an amount other than the demand stated in the consumer's notice of damages. Under section 17.5052, if the consumer rejects the defendant's settlement offer, the settlement offer may be filed with the court with an affidavit certifying its rejection. *See id.* §§ 17.505(f), 17.5052. If the court finds the amount tendered in the settlement offer is the same as, substantially the same as, or more than the damages found by the trier of fact, the consumer's recovery will be limited to the lesser of the amount of damages tendered in the settlement offer or the amount of damages found by the trier of fact. *See id.* § 17.505(g). Section 17.5052 merely limits damages; it is not an affirmative defense to the suit and will not support the summary judgment.

Grizzle responded that her summary judgment evidence showed the "paper losses" were "actual cash losses" and that even a "paper loss" may injure her by reducing the tax basis of her investment, requiring her to pay increased income taxes when she eventually liquidates the trust account. Grizzle acknowledged that the tendered amount equaled her long-term capital loss but contended she was forced to take the "unanticipated" loss prematurely and needlessly and the tendered amount did not include damages for lost income and reimbursement for fees and other charges incurred by or charged to the trust as a result of the liquidation.[13] In her amended affidavit, Grizzle stated that the bank's records showed the trust was damaged because of lost income that occurred when the cash was not reinvested for several days after liquidation and that audit fees were charged against the liquidation proceeds. The trust statements show that Grizzle's investments were sold on April 30, 1994. On May 6, TCB placed the funds into a short-term investment. On May 21 and June 11, TCB reinvested Grizzle's money into fixed income and common stock funds. The bank documents attached to Grizzle's amended affidavit also refer to distribution and audit fees assessed against the liquidated investments. We conclude that Grizzle's evidence raised a fact issue on whether she was damaged by untimely reinvestment of funds and by the assessment of distribution and audit fees.

■ TCB also moved for summary judgment on all Grizzle's claims on the ground that, after the merger, it was required by law to liquidate Grizzle's interest in the Frost common investment funds.[14] TCB contended that, under federal regulations, no funds administered by TCB as trustee could be invested in collective trust funds managed by another bank. TCB argued that section 9.18(a)(1) of title 12 of the Code of Federal Regulations allowed banks to invest funds held in a fiduciary capacity in collective funds "maintained by the *bank*." 12 C.F.R. § 9.18(a)(1) (1994) (emphasis added). Further, relying on section 9.18(b)(12), TCB argued that for

13. The Frost defendants contend Grizzle's response to the summary judgment motion did not address the ground that the loss in the trust assets' value was caused by market forces rather than Frost's conduct, and thereby Grizzle waived her complaint about summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex. 1979) (holding a nonmovant who fails to expressly present, in writing, issues defeating summary judgment "may not later assign them as error on appeal"). However, in her response, Grizzle specifically referred to "market fluctuations" that result in "paper losses" and contended TCB's decision to liquidate should have been guided by the .best interest of the trust customers and that "[h]ad the [m]erger not taken place, these paper losses would have evaporated once the markets turned around (which they soon did) ." We conclude these statements preserve appellants' complaints on appeal regarding this ground.

14. TCB contends appellants never argued that TCB or Frost violated any regulation regarding the liquidation, and this failure to challenge this independent ground for summary judgment requires affirmance. *See Williams*

*v. Crum & Forster Commercial Ins.*, 915 S.W.2d 39, 43 (Tex.App.—Dallas 1995) (holding appellate court affirms summary judgment as to claim when appellant does not properly challenge each of the independent grounds asserted for summary judgment as to that claim), *rev'd on other grounds*, 955 S.W.2d 267 (Tex.1997) (per curiam). In the response to the summary judgment motions, Grizzle specifically attacked this ground. In their amended original brief, appellants acknowledge, in the statement of facts, that each bank liquidated all common trust funds of its predecessor bank after the swap because section 9.18(b)(12) of title 12 of the Code of Federal Regulations prohibited a bank, as a trustee, from holding investments that were part of another bank's proprietary *common trust fund.* Further, *in the reply brief*, appellants state that, while the banks "proclaim that they were just doing what federal law required when they liquidated all assets invested in the common trust funds, [t]his ... view fails to recognize that the banks had the responsibility to mitigate any damages" the transaction would cause the trust beneficiaries. We conclude these references are sufficient to avoid affirmance on this ground.

every one of its accounts invested in collective funds, TCB must be the sole manager of those funds. 12 C.F.R. § 9.18(b)(12) (1994) ("A national bank administering a collective investment fund shall have the exclusive management thereof.").

Appellants contend that, even if federal law required TCB to liquidate assets invested in Frost's common trust funds, this requirement did not excuse TCB from its responsibility as a fiduciary to mitigate any damages caused by the liquidation. Appellants contend the banks breached fiduciary duties by failing to promptly reinvest the liquidated fund and by charging fees and other expenses to the trust accounts after liquidation, even if liquidation was required. We note that section 9.18(b)(12) provides that "[t]he bank shall absorb the costs of establishing or reorganizing a collective investment fund." *Id.* We concluded above that the summary judgment evidence presents a fact issue regarding whether audit fees were assessed against the trusts; we further conclude that audit fees could come within the "costs of establishing or reorganizing a collective investment fund" referred to in section 9.18(b)(12). Thus, section 9.18 supports Grizzle's argument that federal banking regulations did not excuse TCB's failure to mitigate any damages, such as charging expenses related to the liquidation and reinvestment of the funds after the merger. Thus, TCB has failed to show that section 9.18 entitles it to summary judgment as a matter of law on Grizzle's claims. We resolve appellants' fourth issue in their favor.

■■■ In the seventh issue, appellants contend the trial court erred in refusing to reconsider its summary judgment ruling after a TCB witness recanted a previous affidavit. In her motion for reconsideration and/or for new trial, Grizzle contended that newly discovered evidence in the form of a recantation raised a fact issue as to damages because the witness's deposition testimony denying knowledge whether fees, costs, or charges were as-

sessed against the trusts in connection with the liquidation conflicted with her affidavit testimony that no fees were charged. The trial court denied the motion. However, we have concluded above that bank documents attached to Grizzle's amended affidavit refer to audit fees being assessed against the trusts and thus raised fact issues regarding whether Grizzle suffered damages. Therefore, the deposition testimony Grizzle relied on as "newly discovered evidence" was cumulative of uncomplained-of evidence on the issue of damages. A motion for new trial on the basis of newly discovered evidence is directed to the trial court's discretion, and a party moving for new trial on the basis of newly discovered evidence bears the burden of showing, in part, that the evidence is not cumulative. *See Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983). Because appellants cannot show the trial court abused its discretion in denying the motion, we resolve appellants' seventh issue against them.

## Other Grounds for Summary Judgment

In the third issue, appellants contend the court erred by granting summary judgment because the motions failed to negate an essential element of each cause of action Grizzle pleaded. Therefore, we consider appellants' arguments that summary judgment cannot be supported on any other ground urged by the banks.

### *Exculpatory Clause*

■■ The banks moved for summary judgment on the ground that an exculpatory provision of the Grizzle Trust precluded liability. The pertinent provision states: "This instrument shall always be construed in favor of the validity of any act or omission of any Trustee, and a Trustee shall not be liable for any act or omission except in the case of gross negligence, bad faith, or fraud." The Frost defendants contended the exculpatory clause entitled them to summary judgment as a matter of law on Grizzle's tort claims for breach of fiduciary

duty, DTPA violations, negligence, and tortious interference with contracts but not on claims of gross negligence, bad faith, or fraud. TCB contended the exculpatory clause precluded liability because TCB cannot be held liable for any negligence unless such negligence rises to the level of gross negligence, bad faith, or fraud. TCB contended the merger was a usual and ordinary business transaction and "the resulting liquidation of the collective trust funds was mandated by Texas law."

■■■ The Texas Trust Code specifically gives to the trustor or settlor the power to relieve his trustees from any liabilities imposed by that Act, except that a corporate trustee cannot be relieved of liability for certain self-dealing transactions. *See* TEX. PROP.CODE.ANN. §§ 111.002, 113.059(a) (Vernon 1995). Exculpatory provisions included in trust instruments are strictly construed, and the trustee is relieved of liability only to the extent that is clearly provided in the trust instrument. *See Price v. Johnston*, 638 S.W.2d 1, 4 (Tex. App.—Corpus Christi 1982, no writ).

■■■ Section 113.053(a)(1) of the Texas Trust Code prohibits a trustee buying from or selling trust assets to itself or a closely related entity unless an enumerated exception applies. *See* TEX.PROP.CODE ANN. § 113.053(a)(1) (Vernon 1995). However, this statutory prohibition does not exhaust the possibilities of conflicts of interest by a trustee. Public policy precludes a fiduciary from limiting his liability for: (1) self-dealing; (2) bad faith; (3) intentional adverse acts; and (4) reckless indifference about the beneficiary and his best interest. *McLendon v. McLendon*, 862 S.W.2d 662, 676 (Tex.App.—Dallas 1993, writ denied); *Grider v. Boston Co.*, 773 S.W.2d 338, 343 (Tex.App.—Dallas 1989, writ denied). Self-dealing means the trustee used the advantage of its position to gain any benefit for the trustee, other than reasonable compensation, or any benefit for any third person, firm, corporation, or entity, at the expense of the trust and its beneficiaries. *Grider*, 773 S.W.2d at

343; *InterFirst Bank Dallas, N.A. v. Risser*, 739 S.W.2d 882, 899 (Tex.App.—Texarkana 1987, no writ). A trust instrument's exculpatory language "purporting to relieve the trustee from liability except for gross negligence and bad faith cannot be used to excuse the trustee from the misapplication or mishandling of trust funds." *Langford v. Shamburger*, 417 S.W.2d 438, 444 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n.r.e.). Such conduct includes the failure to reinvest "substantial sums of trust monies." *Id.* The duty of fidelity required of a trustee forbids the trustee from placing itself in a situation in which there is or could be a conflict between its self-interest and its duty to the beneficiaries. *Slay v. Burnett Trust*, 143 Tex. 621, 639–40, 187 S.W.2d 377, 387–88 (1945); *Risser*, 739 S.W.2d at 898.

Grizzle pleaded that the banks, rather than preserving and protecting trust assets, merged and liquidated the trust funds for their own business reasons, and as a result, the trusts suffered a loss from the liquidation, failure to reinvest the funds, investment in lower income producing funds, and allocation of audit fees and other costs against the trusts. Therefore, Grizzle maintains the merger and liquidation transaction was self-dealing by the banks and the trust's claims are not barred by the exculpatory clause. She argues that the trust instrument expressly states that nothing in the trust instrument shall be construed to limit the fiduciary obligation of the trustee. Relying on *Langford*, Grizzle contends the exculpatory clause does not excuse the banks' self-dealing, including misapplying or mishandling trust funds and unreasonable delay in reinvestment. *See Langford*, 417 S.W.2d at 444–45.

We have concluded above that there is evidence TCB failed to promptly reinvest the liquidated funds. Indulging every reasonable inference in Grizzle's favor, as we must, we further conclude that the failure to promptly reinvest liquidated funds is

evidence of mishandling of trust funds included within the meaning of self-dealing. *See id.* Because the exculpatory clause does not relieve a trustee from liability for self-dealing and a fact issue exists whether the banks engaged in self-dealing, the exculpatory clause will not support summary judgment for the banks.

### No Misrepresentations

■■■ The Frost defendants moved for summary judgment on Grizzle's claims for fraud and for misrepresentation under the DTPA on grounds that neither Frost nor New Galveston ever made any misrepresentations to her. The Frost defendants contended that the sole basis of Grizzle's fraud claim was a letter sent by Richard W. Phillips, a TCB trust officer, one day after the merger and that Grizzle admitted she did not "take any action in reliance on the letter." Further, the Frost defendants contended that throughout her deposition, Grizzle admitted that no Frost representative made any representation to her regarding Frost's handling of the Grizzle Trust and that telephone conversations with Frost representatives were about "unimportant things."

In her response, Grizzle asserted that the liquidation occurred solely as a result of the swap and that each trust, with no advance warning from the trustee banks, suffered actual cash losses when there were options to liquidation.[15] On appeal, Grizzle contends the summary judgment evidence addressed only affirmative statements. She contends that a failure to disclose when a party has a fiduciary relationship requiring disclosure is a false representation. *See Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 435 (Tex.1986) ("When the particular circumstances impose on a person a duty to speak and he deliberately remains silent, his silence is equivalent to a false representation."); *see also* TEX.BUS. & COM.CODE ANN. § 17.46(23) (Vernon 2001) (failure to disclose information known at time of transaction, if such failure was intended to induce consumer into transaction consumer would not have entered if information disclosed, prohibited as unlawful false, misleading, or deceptive act). In her deposition, Grizzle was asked, "Is there anything that you claim that Cullen/Frost should have told you in connection with the merger?" Grizzle responded, "That's kind of vague. I mean, if they'd have known, surely they should have told me . . . ." Further, in her amended affidavit, Grizzle asserted that she was not provided with "advance notice of the Frost/TCB merger transaction, and the ramifications to the Grizzle Trust and to Brentley, both from a tax standpoint and otherwise, were not explained to me by either bank prior to or subsequent to the Merger." We conclude the summary judgment evidence raises a fact issue on whether the Frost defendants' failure to disclose the consequences of the merger and liquidation amounted to misrepresentation. Therefore, summary judgment for the Frost defendants on this ground is improper.

### No Fraud Separate from Breach of Contract

■■■ The Frost defendants, in their motion for summary judgment, also asserted that Grizzle was not entitled to a separate recovery on a fraud cause of action because there were no damages attributed to fraud rather than the contract. Therefore, the Frost defendants contend, Grizzle pleaded nothing more than a breach of contract claim. However, if a fraud claim arises from an act separate from the failure to perform a contract, recovery for the tort is not precluded, even though the

---

**15.** The Frost defendants contend Grizzle did not present any argument to the trial court regarding why they were not entitled to summary judgment on the claims for fraud and misrepresentation under the DTPA and, therefore, cannot argue otherwise for the first time on appeal. *See Clear Creek Basin Auth.,* 589 S.W.2d at 678–79. However, we conclude that Grizzle's references in her response to the trust's losses from the liquidation without advance warning preserve appellants' complaint on appeal.

damages are economic and related to the contract. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 45–47 (Tex.1998). Grizzle's fraud claim arises from Phillips's letter notifying her of the merger and the change in trustee from Frost to TCB. Phillips stated that no changes were required in the administration of the trust account, no adjustments to the trust documents or agreements were necessary, and "[a]s service enhancements or other developments are planned" beneficiaries would be "notified well in advance." Thus, Grizzle's fraud claim arises from being induced to accept the change in trusteeship resulting from the merger on Phillips's assurances that no change in the trust agreements or their administration was necessary and not on the breach of the trust agreements. Therefore, because the allegedly fraudulent acts are separate from any breach of the trust agreements, even though Grizzle alleges economic damages, the Frost defendants are not entitled to summary judgment on the fraud claim.

### No Claim against Frost

█ In their motion for summary judgment, the Frost defendants asserted they were entitled to summary judgment because Grizzle, in deposition testimony, agreed she did not claim "that any person or entity entered into some kind of conspiracy as it related to [her] daughter's trust." However, in her amended affidavit, Grizzle stated that at her deposition, she should have asked what was meant by "conspiracy" and she did not understand the legal meaning of that term. Because conflicting inferences may be drawn from the deposition and from Grizzle's affidavit, we conclude that a fact issue is presented that precludes summary judgment. *See*

*Randall v. Dallas Power & Light Co.,* 752 S.W.2d 4, 5 (Tex.1988) (per curiam) (fact issue presented when conflicting inferences may be drawn from deposition and affidavit filed by same party in opposition to motion for summary judgment); *Green v. Unauthorized Practice of Law Comm.,* 883 S.W.2d 293, 297 (Tex.App.—Dallas 1994, no writ) (same). Therefore, summary judgment on Grizzle's claim for conspiracy against the Frost defendants is improper.

█ The Frost defendants also moved for summary judgment on grounds that Grizzle did not seek damages from Frost.[16] As summary judgment evidence, the Frost defendants relied on Grizzle's answer to an interrogatory regarding alleged damages from Frost and New Galveston, to which Grizzle responded that she was not "seeking damages directly from Frost" but was seeking damages from New Galveston. The Frost defendants also relied on Grizzle's deposition testimony in which she responded "That's correct" to the question, "So you're not seeking any recovery whatsoever ... from Frost National Bank, correct?" However, in their reply brief, appellants argued that Grizzle's deposition testimony is explained and/or controverted by her affidavit testimony. In the amended affidavit submitted to support her response to the motions for summary judgment, Grizzle stated that neither TCB nor Frost explained the tax and other ramifications of the merger transaction to her and that Frost's trust documents reflected audit fees were taken out of Frost's liquidation proceeds which were wire transferred to TCB. Appellants contend this affidavit testimony contradicts Grizzle's interrogatory and deposition testimony, creating a fact issue on whether her claims were based on Frost's conduct. Because

---

**16.** The Frost defendants contend summary judgment in favor of Frost should be affirmed because Grizzle did not challenge the summary judgment on this ground. *See Williams,* 915 S.W.2d at 43. However, Grizzle addressed this contention in her response. Further, in the amended original brief, appellants contend Grizzle suffered economic damages

under the DTPA, as well as non-economic damages that support her breach of fiduciary duty claim against the Frost defendants. Therefore, we reject the Frost defendants' argument that summary judgment should be affirmed on all claims because appellants did not challenge summary judgment on this ground.

conflicting inferences may be drawn from Grizzle's deposition and from her affidavit, we conclude that a fact issue is presented that precludes summary judgment. *See Randall*, 752 S.W.2d at 5; *Green*, 883 S.W.2d at 297. Therefore, summary judgment is improper on grounds that Grizzle did not seek any damages from Frost.

### Frost Defendants Entitled to Summary Judgment on Civil Conspiracy Claims

#### Conspiracy Generally

The Frost defendants moved for summary judgment on grounds that, as a matter of law, New Galveston was incapable of conspiring with its wholly-owned subsidiary, Frost, and New Galveston was entitled to summary judgment on Grizzle's claims for breach of fiduciary duty, breach of contract, DTPA violations, negligence, gross negligence, and fraud because these claims are predicated on a finding of conspiracy. An actionable civil conspiracy requires a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *See Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983). The Frost defendants relied on *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771, 777, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), to support their contention that a corporation and its wholly owned subsidiary are incapable of conspiring with each other for purposes of antitrust law because they have a complete unity of interest. Texas courts are split on whether the holding in *Copperweld Corp.* applies to common law conspiracies. In *Metropolitan Life Insurance Co. v. La Mansion Hotels & Resorts, Ltd.*, 762 S.W.2d 646, 651–52 (Tex.App.—San Antonio 1988, writ dism'd w.o.j.), the Fourth Court of Appeals concluded that the *Copperweld Corp.* holding applies only to the antitrust context and is not applicable to common law conspiracies because the Supreme Court limited its holding to cases involving alleged violations of the Sherman

Act. Other courts agree. *See, e.g., Holloway v. Atlantic Richfield Co.*, 970 S.W.2d 641, 644 (Tex.App.—Tyler 1998, no pet.); *Atlantic Richfield Co. v. Long Trusts*, 860 S.W.2d 439, 447 (Tex.App.—Texarkana 1993, writ denied). However, the Fourteenth Court of Appeals ignored the antitrust context and cited *Copperweld Corp.* for the proposition that, "[a]s a matter of law, a parent corporation cannot conspire with its fully owned subsidiary." *Atlantic Richfield Co. v. Misty Prods., Inc.*, 820 S.W.2d 414, 420 (Tex.App.—Houston [14th Dist.] 1991, writ denied).

This Court has held that "[n]otwithstanding the fact that a parent corporation owns the entire capital stock of the subsidiary corporation, the two corporations are separate legal entities, and, whatever may have been the motive leading to their separate existence, they can only be regarded as separate entities for the purpose of legal proceedings." *Rimes v. Club Corp. of Am.*, 542 S.W.2d 909, 912 (Tex.Civ. App.—Dallas 1976, writ ref'd n.r.e.). We defined a subsidiary corporation as "one which is controlled by another corporation by reason of the latter's ownership of at least a majority of the shares of the capital stock," and we reiterated that "[n]otwithstanding two corporations may be so related, each is deemed to have an independent existence." *Id.* Following *Rimes* and restricting the holding of *Copperweld Corp.* to the antitrust context, as do the majority of our sister courts of appeals that have considered this issue, we conclude that New Galveston and Frost are two separate legal entities and are thus not entitled to summary judgment on all causes of action merely because Frost is a wholly owned subsidiary of New Galveston. Therefore, this ground does not support summary judgment for the Frost defendants.

#### Conspiracy to Breach Contract

The Frost defendants argue New Galveston cannot be liable for conspiracy to breach a contract because no such cause of action exists. Specifically, the Frost de-

fendants contend there is no independent liability for an alleged civil conspiracy, *see, e.g., Tex. Oil Co. v. Tenneco Inc.,* 917 S.W.2d 826, 836 (Tex.App.—Houston [14th Dist.] 1994) (op. on reh'g), *rev'd in part sub nom, Morgan Stanley & Co. v. Tex. Oil Co.,* 958 S.W.2d 178 (1997), and a plaintiff must thus plead and prove another substantive tort upon which to base a civil conspiracy claim. *See, e.g., Ross v. Arkwright Mut. Ins. Co.,* 892 S.W.2d 119, 132 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Schoellkopf v. Pledger,* 778 S.W.2d 897, 900 (Tex.App.—Dallas 1989, writ denied). Thus, they contend breach of contract is not a cause of action on which a civil conspiracy may be based. Grizzle responds that Texas courts have recognized a cause of action for conspiracy to breach a contract, citing *MacDonald v. Trammell,* 163 Tex. 352, 356 S.W.2d 143 (1962); *Republic Bankers Life Insurance Co. v. Wood,* 792 S.W.2d 768 (Tex.App.—Fort Worth 1990, writ denied); and *Guynn v. Corpus Christi Bank & Trust,* 589 S.W.2d 764 (Tex.Civ.App.—Corpus Christi 1979, writ dism'd w.o.j.). However, those authorities do not address a cause of action for conspiracy to breach a contract. *See MacDonald,* 356 S.W.2d at 144–45 (holding no cause of action can be maintained against wife for inducing or conspiring to induce husband to breach unenforceable contract); *Wood,* 792 S.W.2d at 776 (distinguishing allegations of tortious conduct from indirect attempts to recover from breach of unenforceable contract); *Guynn,* 589 S.W.2d at 771 (discussing requirements for conspiracy to interfere with contract).

■ Further, in *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex.1996), the Texas Supreme Court held that civil conspiracy is a derivative tort and a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. Because breach of contract is not a tort, it will not support a civil conspiracy. *See Deaton v. United Mobile Networks, L.P.,* 926 S.W.2d 756, 760–61 (Tex.App.—Texarkana 1996), *aff'd in part & rev'd in part on other grounds,* 939 S.W.2d 146 (Tex.1997). Accordingly, we affirm the summary judgment in favor of New Galveston on Grizzle's claim for conspiracy to breach a contract against New Galveston.

### Conspiracy to be Negligent and Grossly Negligent

The Frost defendants also moved for summary judgment on Grizzle's claim of conspiracy to be negligent and grossly negligent on grounds that civil conspiracy requires specific intent, that is, for a conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the inception of the agreement, and thus parties cannot engage in a civil conspiracy to be negligent or grossly negligent. The Frost defendants relied on *Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 719, 720 n. 2 (Tex.1995), and *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 857 (Tex. 1968).

■ Appellants did not attack this ground for summary judgment, either in Grizzle's response or on appeal. Appellants did not bring a separate issue or point of error relating to this ground, nor do they direct any argument to it. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970) (allowing challenge of summary judgment on claim by general point with argument directed to specific grounds or separate points of error as to each ground). Therefore, we affirm summary judgment in favor of the Frost defendants on Grizzle's claim for conspiracy to be negligent and grossly negligent. *See Starnes,* 840 S.W.2d at 23 (holding summary judgment affirmed if ground on which summary judgment may have been granted, properly or improperly, not challenged).

### New Galveston Entitled to Summary Judgment on Tortious Interference with Contract

■ The Frost defendants also moved for summary judgment on grounds that New Galveston was entitled to summary judgment on the claim for tortious interference with contracts. Grizzle pleaded that New Galveston and TCE, as parties to the merger agreement, "willfully and intentionally induced [Frost] and [TCB], respectively, to breach and violate the provisions of . . . [the] trust agreements." Relying principally on *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex.1995), and *Deauville Corp. v. Federated Department Stores, Inc.*, 756 F.2d 1183, 1196–97 (5th Cir.1985), Frost contended that, because Frost is a wholly owned subsidiary of New Galveston, there was a complete identity of Frost's and New Galveston's financial interests, and they were the same entity for purposes of tortious interference with the other's business relations. As evidence, the Frost defendants provided the affidavit of Phillip D. Green, New Galveston's director and treasurer, who stated that Frost was a wholly owned subsidiary of New Galveston.

■ Tortious interference with a contract requires a third-party stranger to the contract who wrongly induces another contracting party to breach the contract. *Skinner*, 898 S.W.2d at 794-95. We have noted above that Frost and New Galveston are separate legal entities. *See Rimes*, 542 S.W.2d at 912. However, the Texas Supreme Court has held that "[w]hen there is a complete identity of interests [between two entities], there can be no interference [with a contract] as a matter of law." *Skinner*, 898 S.W.2d at 797. In *Deauville Corp.*, the Fifth Circuit, applying Texas law, determined that a parent corporation's and its wholly owned subsidiary's financial interests were so closely aligned as to eliminate their separate identity because the parent controlled the subsidiary's operation and enjoyed the benefit of any profit. *Deauville Corp.*, 756 F.2d at 1196–97.

The Frost defendants' evidence showed that Frost was the wholly owned subsidiary of New Galveston. Appellants do not point to any controverting evidence. Therefore, following the reasoning of *Deauville Corp.*, there is no fact issue on whether New Galveston and Frost had a complete identity of financial interest and, therefore, had no separate identity for purposes of tortious interference.[17] We conclude, as a matter of law, that New Galveston, a parent corporation with a complete identity of financial interest with its wholly owned subsidiary, Frost, cannot tortiously interfere with Frost's trust agreements with Grizzle.[18] We affirm summary judgment for New Galveston on

---

**17.** Grizzle argues that tortious interference with the contract of TCB was not addressed. Grizzle, however, did not have a contract with TCB at the time of New Galveston's alleged acts. Thus, New Galveston could not have interfered with a contract between Grizzle and TCB.

**18.** We note this conclusion is in accord with the conclusions in *H.S.M. Acquisitions, Inc. v. West*, 917 S.W.2d 872, 882–83 (Tex.App.—Corpus Christi 1996, writ denied) (no tortious interference when parent and wholly owned subsidiary had a "complete unity of interest"); *Am. Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 337 (Tex.App.—Houston [14th Dist.] 1991, no writ) (op. on reh'g) (tortious interference impossible as a matter of law when "completely owned subsidiary" and parent were so closely aligned that they had a "complete unity of interest"); and *Schoellkopf*, 778 S.W.2d at 902–03 (no tortious interference when company "owned, controlled, and dominated" by two individuals had a unity of interest with the individuals and were thus "so closely aligned as to be one entity"), but it is not in accord with the conclusion in *Valores Corporativos, S.A. de C.V. v. McLane Co.*, 945 S.W.2d 160, 167–68 (Tex.App.—San Antonio 1997, writ denied) (parent corporation is legally capable of tortious interference with its wholly owned subsidiary's contractual relations because, as a separate entity whose financial interests are usually identical with the subsidiary's, parent's interference may be privileged under circumstances where "the financial interests of neither motivate the interference").

the claim of tortious interference with contracts.

Therefore, we resolve appellants' third issue against them in part as follows: we affirm summary judgment in favor of (1) the Frost defendants on the claim of conspiracy to be negligent and grossly negligent, (2) New Galveston on the claims of conspiracy to breach a contract, and (3) New Galveston on the claim for tortious interference with contracts. We resolve appellants' third issue in their favor as to all other claims.

### Dismissal of Class Action

In their eighth issue, appellants contend the court erred by dismissing Grizzle's claim for class action. In their motions for summary judgment, the banks, relying principally on *Stanley*, 839 F.Supp. at 434, asserted that, because they were entitled to summary judgment on all of Grizzle's claims as a matter of law, Grizzle had no live individual claim and, thus, no standing to bring suit on behalf of a putative class. However, we have determined that the trial court improperly granted summary judgment on most of those claims. Therefore, because Grizzle maintains claims that are "live individual claims" before the trial court, *Stanley* does not support summary judgment on the class claim. We conclude the trial court erred in dismissing Grizzle's claim for class action, and we resolve appellants' eighth issue in their favor.

### CONCLUSION

We affirm the trial court's grant of summary judgment in favor of the Frost defendants on Grizzle's claims of conspiracy to be negligent and grossly negligent, and we affirm the summary judgment in favor of New Galveston on Grizzle's claims of conspiracy to breach a contract and tortious interference with contracts. Because we have resolved appellants' second issue in their favor, we reverse the trial court's orders striking the interventions of the Ruckers and Wehde. Because we have resolved appellants' first and third issues, in part, as well as their fourth, fifth, sixth, and eighth issues in their favor, we reverse the trial court's grant of summary judgment on all other claims and remand them to the trial court for further proceedings.